WILLIAM E. D. STOKES, Appellant, *v.* EDWARD S. STOKES, Respondent.

*New trial — motion therefor on the ground of newly-discovered evidence — proof of an oral agreement contemporaneous with a deed and to the same effect.*

In an action on certain notes the answer admitted the defendant's indebtedness, but alleged the conversion by the plaintiff of certain bonds held to secure their payment, and it was decided by the Court of Appeals, in affirmance of the judgment of the trial court, that the burden of proof being upon the defendant to show that the bonds in question were not held by the plaintiff as collateral security for any obligation of the defendant other than the notes in suit, and there being evidence tending to show the possession by the plaintiff of certain notes of one Read which had been guaranteed by the defendant, the conversion had not been established.

*Held,* that a motion for a new trial on the ground of mistake and surprise and because of newly-discovered evidence — based on the affidavit of Read that prior to the trial of the action he had conveyed certain land to the plaintiff by an instrument in writing, and under a contemporaneous oral agreement to the same effect, by which the plaintiff covenanted to discharge the indebtedness to himself, evidenced by the Read notes, as part consideration for the conveyance

of the property, which fact was concealed from the defendant by both parties to the deed and was not known to him until shortly before the motion was made — should be granted.

In such a case the contemporaneous parol agreement is admissible in evidence, it being a mere restatement of the legal effect of the writing signed by the parties, not tending to vary the written agreement, but rather to supplement it, and thus show their real agreement.

APPEAL by the plaintiff, William E. D. Stokes, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of May, 1898, granting the defendant's motion for a new trial made upon the grounds of mistake and surprise and because of newly-discovered evidence.

*Albert B. Boardman,* for the appellant.

*James C. Carter,* for the respondent.

INGRAHAM, J.:

The court below having granted the defendant in this action a new trial, we are asked to reverse that order. The record is very voluminous, and a statement of a few of the salient facts will be sufficient to show the reason for our decision of this appeal. The action was brought to recover upon four certain promissory notes made by the defendant to the plaintiff. These notes were secured by a deposit as collateral security of 125 bonds of the Hoffman House. Subsequent to the deposit of these bonds as security, and on the 18th of August, 1891, an agreement between the plaintiff and the defendant was made, and as security for the performance of that agreement by the defendant, and for the obligation incurred by him thereunder, 150 bonds of the Hoffman House were to be delivered to the plaintiff by the defendant. These 150 bonds were to consist of the 125 already in the plaintiff's hands as security for the four notes in suit, and 25 others which the defendant was to add. It also appears to have been settled by an adjudication in an action brought in this court, and which has been affirmed by the Court of Appeals, that this August agreement between the parties was never in fact performed by the plaintiff and that it could not be enforced against the defendant. When the notes became due, the defendant tendered to the plaintiff the amount thereof and demanded the

return of the 125 bonds held as collateral security therefor. The tender was refused upon the ground that the plaintiff was entitled to retain possession of the bonds as security for other obligations of the defendant. The defendant, by his answer in this action, admitted his liability upon the notes in suit, and by way of counterclaim alleged the tender of the amount due thereon and the demand for the bonds. He also alleged a refusal, upon such demand, to return the bonds and a subsequent conversion thereof by the plaintiff. The counterclaim demanded judgment against the plaintiff for the value of the bonds so converted, less the amount due upon the notes. To this counterclaim the plaintiff replied, alleging the August contract and that the 125 Hoffman House bonds held by him were deposited under that agreement.

The action coming on for trial and the defendant having admitted his liability upon the notes, he claimed, and was allowed the affirmative, and offered evidence tending to show the tender of the amount due and the demand for the return of the bonds; the refusal and the value of the bonds, and also the record of the judgment entered in the action in this court, by which it was determined that the August agreement, under which the plaintiff claimed to hold the bonds, could not be enforced against him. This August agreement, however, recited the existence of the two notes known as the "Read notes," which the defendant had guaranteed. The result of the trial was that a verdict was directed for the plaintiff against the defendant for the full amount of the notes, and a judgment entered upon that verdict was affirmed by the General Term of the Superior Court (the court in which the action was then pending) and by the Court of Appeals. The learned judge of the Court of Appeals, upon whose casting vote the judgment was affirmed, placed his concurrence upon the ground that, the burden of proof being upon the defendant to show that the 125 bonds in question were not held by the plaintiff as collateral security for any other obligation except the notes in suit, and there being evidence tending to show the existence of these Read notes, which were guaranteed by the defendant, he had not affirmatively sustained that burden. The learned judge consequently concluded that the defendant had failed to establish the conversion alleged, and was not, therefore, entitled to a verdict

on his counterclaim. It is alleged by the defendant that there was no express claim made by the plaintiff on the trial to hold these bonds as security for the Read notes, except so far as they were mentioned in the August agreement as a part of his, defendant's, obligation.

This motion was made after the decision of the appeal by the Court of Appeals, upon two grounds: *First*, that the defendant was surprised by the evidence given upon the trial as to the Read notes and the construction placed by the Court of Appeals upon his testimony, and, *second*, upon the ground of newly-discovered evidence. It is only necessary for us to consider the latter ground in disposing of this appeal.

These two notes which were guaranteed by the defendant were given by Read to the plaintiff for money paid to Read for his personal use and for the purpose of satisfying his obligations to the corporation known as the Hoffman House, in which both the plaintiff and defendant were interested. Read, upon this motion, testified that about the time the notes, or one of them, became due, he made an agreement with the plaintiff whereby he sold to the plaintiff 33,000 acres of land owned by Read in the State of West Virginia, and that part of the consideration of that conveyance was the discharge of the indebtedness from Read to the plaintiff evidenced by the notes in question which had been guaranteed by the defendant. Read swears positively that the plaintiff promised him that if he would thus convey the tract of land, the plaintiff would, as part consideration for the conveyance, release and discharge the said notes and all the other indebtedness of Read to him. There is also produced a deed from Read to the plaintiff, dated December 19, 1891, by which Read, the party of the first part, "in consideration of seven thousand dollars and other good and valuable considerations, lawful money of the United States, paid by the party of the second part, doth hereby grant and release unto the said party of the second part, his heirs and assigns forever, all the thirty-three thousand four hundred and ninety and 20/100 acres of land, undivided," in the State of West Virginia, with a certificate of record of this deed in December, 1891, and January and February, 1892. There was also presented an agreement bearing the same date as the deed, reciting the deed and the consideration, therein expressed of

$7,000 and other good and valuable consideration, and providing as an agreement between the parties that " said consideration should be as follows : *First,* Seven thousand dollars for two thousand acres of said land undivided, in fee and free and clear of all incumbrances in cash or in the notes of said Stokes. When the title of said land is examined and approved, said sum to be applied on and to reduce the claim of Lloyd W. Williams under the trust deed for his benefit made by said Read to Thomas N. Williams dated 26th of October, 1891. *Secondly,* For the remaining 31,490 20/100 acres, undivided forty per cent thereof, to wit, 12,596 08/100 acres, undivided, to said Stokes (the plaintiff) for his past services in undertaking, opening and developing said land and what he may hereafter do in these respects. *Thirdly,* For the other sixty per cent of said 31,490 20/100 acres undivided to wit, 18,894 12/100 acres undivided, the repayment to said Stokes of the sums of money he has lent or may thereafter lend to said Read, and for the performance of said Read's obligations and guarantees to said Stokes. The account against said Read for his said notes outstanding at this date being $30,042.14, not including interest for which said Stokes now holds as collateral 1,463 shares common stock of Hoffman House, and also the reimbursements to said Stokes for the payments he may make of the amounts due to the said Lloyd W. Williams and to Okey Johnson secured by the deed of trust to said Thomas N. Williams aforesaid ;" and, *fourthly,* the residue of the proceeds of the said lands, to wit, of the 18,490 20/100 acres undivided when sold, but not to exceed the rate of eight dollars per acre, to constitute a principal fund to be invested for the benefit of the two children of said Read. The said agreement then contains the following provision : " Now, therefore, the said Stokes covenants and agrees to and with the said Read to pay and apply the consideration as above expressed." The agreement further provided that " said Read, in consideration of the premises, hereby waives and releases all claim and lien on said land, and relies on this agreement as a personal covenant only." This agreement was not recorded and was produced by Read upon the argument of this motion.

Upon this motion the defendant presented his affidavit, in which he deposed that, at the time of the trial of this action, he did not know and had no means of proving the nature of the transaction

between the plaintiff and Read, or that the plaintiff had promised to Read, in consideration of such conveyance, not to enforce said notes, and that the notes should be discharged as aforesaid; that he had no knowledge of the execution of this contract or of its terms until about four weeks before the making of the motion, and while he had learned that Read had conveyed a tract of land in West Virginia to the plaintiff, he was unable to ascertain the nature of the transaction between plaintiff and Read or the disposition which had been made of the said Read notes; that at the time of the transaction and down to some time after the trial of this action the relations between the defendant and the plaintiff and Read were unfriendly and antagonistic, and that neither the plaintiff nor Read would give the defendant any information whatever; that the defendant's first knowledge of the agreement between the plaintiff and Read was acquired at an interview with Read about four weeks before the application was made; that then for the first time the defendant had knowledge of this agreement between the plaintiff and Read, and that he was informed by Read that there was an additional agreement between plaintiff and Read by which the main agreement with Read was to be kept secret in order to hold this defendant upon these said notes, This allegation of the defendant is corroborated by Read's affidavit in which he says that "the said agreement and the nature of the said transaction between the plaintiff and deponent was not disclosed to the defendant, and during the time of the said negotiations with the plaintiff and at the time of the making of the said deed and agreement deponent was not on friendly terms with the defendant, but, on the contrary, their relations had become unfriendly and antagonistic; and at the time of the execution of said conveyance and the making of the said agreement it was understood between the plaintiff and deponent that the making of said agreement and its terms, and the arrangement which had been made for the discharge of the said notes above mentioned, and the entire transaction aforesaid, should not be disclosed to the defendant, and that deponent did not disclose to defendant the making of said agreement or its terms, or the arrangement which had been made as aforesaid for the discharge of the said above-mentioned notes until about four weeks ago, when deponent met defendant accidentally, and that the defendant then spoke to the deponent in regard to his transactions with the plaintiff

and particularly with reference to the said two notes above mentioned, and deponent then informed defendant for the first time as to the said arrangement for the discharge of said notes and of what the plaintiff had promised deponent in consideration of the conveyance of said land. That in case a retrial of this action is had, deponent is willing to testify to all the facts herein stated." It further appeared that those notes made by Read were never presented to him for payment and that no steps were taken against him to collect the notes until 1894, long after the trial of this action, although one of the notes became due in November, 1891, and the other in June, 1892.

An affidavit of Read's is also presented in which he swears that at the time the demands for the amount of these notes were made upon him it was stated to him that such demand was for the purpose of reaching the defendant and for use by the plaintiff in connection with possible proceedings against the defendant and should not in any way affect deponent's rights under the agreement with the plaintiff set forth in Read's prior affidavit. The plaintiff admits the conveyance of the land from Read to himself and admits the execution of the agreement between himself and Read, but denies the making of the agreement whereby these notes are discharged as part consideration for the conveyance of the property.

The situation presented is that the defendant has been defeated in the prosecution of his counterclaim upon the sole ground that he failed to show affirmatively upon the trial that the plaintiff was not entitled to retain these Hoffman House bonds, which were the basis of his counterclaim, as security for these two Read notes of which the defendant was the indorser. He now presents evidence tending to show that long before the trial of the action or the tender made to the plaintiff of the amount due upon the notes in suit, the Read notes, of which he was guarantor, had been discharged as the consideration for the conveyance of the land in West Virginia; that the knowledge of such discharge was kept from him in pursuance of an agreement between the plaintiff and Read so as to enable the plaintiff to use these notes against him, although in fact they had been discharged as between the plaintiff and Read; and that, until shortly before the making of the motion, this scheme of the plaintiff and Read had been successful and the defendant had been kept

from any knowledge of the discharge of the notes which, if proved, would have enabled him to succeed in his counterclaim.

The plaintiff has tried to show that the defendant had knowledge of this conveyance of land and of the agreement between Read and the plaintiff. A careful consideration of all the facts presented by the plaintiff satisfies us, however, that the defendant did not have knowledge of the terms of this agreement. It is most suggestive in this aspect of the case to notice the reply of the plaintiff to this claim of the defendant which was the basis of his counterclaim. That reply refrains from alleging that the plaintiff was entitled, independent of the August agreement, to retain the Hoffman House bonds as security for the payment of the Read notes. He justifies refusal of the tender solely upon the ground that he was entitled to retain them under the August agreement. In the equity action between the plaintiff and the defendant, however, it had been adjudged that the plaintiff was not entitled to enforce the August agreement as against the defendant; and it is, therefore, difficult to understand why, if the Read notes were then existing obligations of Read, or if the liability of the defendant upon them was then an existing liability, the plaintiff refrained from alleging that, even if the August agreement could not be enforced against the defendant, he was still entitled to hold these Hoffman House bonds as security for the payment of the Read notes. The failure to attempt to enforce these notes against Read or to realize upon the securities which the plaintiff held as collateral is also suggestive. The plaintiff's acts thus tend to corroborate Read's statement that, at the time of the conveyance of this land, there was a complete understanding that these notes of his were thereby discharged. An examination of the conveyance itself, read in the light of the cotemporaneous written agreement executed between the plaintiff and Read, also corroborates Read's claim that as part consideration for this conveyance these notes were to be discharged. The conveyance in terms is in consideration of $7,000 and other good and valuable consideration. By the cotemporaneous written agreement the parties stipulated as to what that "other good and valuable consideration" was. The consideration for 2,000 acres of the land conveyed was the $7,000 in cash that was to be paid to Williams. The consideration for the conveyance

of another portion of the land conveyed, viz., 12,596 acres, was the money expended and the services that the plaintiff had rendered or was to render in improving the property; and the consideration for the conveyance of the remaining land was in part the "repayment" to the plaintiff of these identical notes. The agreement was not that the plaintiff was to hold this remaining portion of the land as security for the payment of these notes. By this agreement, as well as by the conveyance itself, Read's interest in the land was conveyed absolutely to the plaintiff, and by the express terms of the agreement Read was to have for its enforcement no interest in or lien upon the land. It provided that he should rely entirely upon the personal covenants contained therein for any right that he should have to any portion of the proceeds of the land when sold by the plaintiff; and the plaintiff covenanted and agreed "to pay and apply the consideration"—for the conveyance of the land—"as above expressed," viz., in repayment for the Read notes. Thus, part of the consideration for the conveyance of this land to the plaintiff was the repayment of these notes in the manner specified. That repayment did not, by the agreement, depend upon the realization of any money by the plaintiff as the proceeds of the land when he should sell it. Such repayment was, by the express terms of the agreement, the consideration for the conveyance by Read to the plaintiff, which vested the property in the latter. It seems a little difficult to understand upon what principle these parties could agree that the consideration for a conveyance of land was to be the payment of an obligation of the vendor held by the vendee, and at the same time claim that the obligation which had been repaid by the conveyance was still an existing obligation. The word "payment" itself imports a discharge or satisfaction of the debt or obligation. "Payment" is defined in the Standard Dictionary to be the "act of paying or that which is paid; the discharge of a debt, obligation or duty; satisfaction of a claim; requital; recompense;" and it is defined in Bouvier's Law Dictionary to be the "fulfillment of a promise, or the performance of an agreement; the discharge in money of a sum due." Thus, when the plaintiff agreed that the consideration of the conveyance to him of this land by Read should be the repayment of these notes of Read which the plaintiff held, it was an agree-

ment that the notes themselves should be discharged and that the liability represented by the notes was satisfied. And thus the contemporaneous verbal agreement testified to by Read was a mere restatement of the legal effect of the written one signed by the parties. Were there any doubt, however, as to the true construction of the written agreement in this respect, the parol contemporaneous agreement would clearly be admissible and if found (as Read deposes) as a fact, conclusive. Such a parol agreement, in that view, would not tend to vary the written agreement, but rather to supplement it, and thus show the real and complete agreement of the parties. It may be, as claimed by the plaintiff, that as the burden of proof was upon the defendant to show that these Hoffman House bonds were not held as security for any other demand due from the defendant to the plaintiff, he (the defendant) would not be entitled to a new trial merely upon showing that he had intended to swear that there was no agreement that they should be held as security for any other demand, but had failed to do so when giving his evidence upon the trial. But here the defendant has been defeated in his counterclaim because he failed to prove that the plaintiff did not hold the Hoffman House bonds as security for the repayment of the Read notes. He has now discovered evidence of an agreement between Read, the maker of the notes, and the plaintiff, the holder of them, that the notes at the time of the trial had been paid and were no longer actual existing obligations of Read's for which he could be liable. That such testimony would be most material upon the trial of the issue presented by this counterclaim is apparent. The agreements, if proved, absolutely dispose of the right of the plaintiff to hold the Hoffman House bonds as security for the Read notes. For the plaintiff to insist that the Read notes were existing obligations which would entitle him to hold the securities against the defendant, when in fact he had by a secret agreement with the maker of the notes discharged them and accepted the conveyance of land in payment of them, which secret agreement was kept from the defendant for the express purpose of enabling the plaintiff to enforce an obligation against the defendant which he knew did not exist, would be a fraud upon the defendant which no court would tolerate and which of itself would justify the court upon the facts being brought to its attention in ordering a new trial.

As before stated, we are satisfied from an examination of this record that the defendant had no knowledge at the time of the trial of the terms of this secret agreement, or that any such agreement between the plaintiff and Read existed by which the Read notes were discharged. And it certainly is not even suggested that he had any knowledge of the contemporaneous verbal agreement between the plaintiff and Read by which the conveyance of land was distinctly and in the clearest terms accepted as a discharge of the notes, and by which Read was relieved from all liability thereon, by suit or otherwise.

We are not unmindful of the rules which have been established regulating the granting of motions for a new trial upon the ground of newly-discovered evidence, but we think in this case that the defendant presented to the court below a case which justified the court in granting a new trial. The evidence tended pointedly to show that the Read notes had been discharged. The continued existence of the Read notes and the right of the plaintiff to hold the Hoffman House bonds as security for their repayment are the grounds upon which the Court of Appeals refused the defendant a new trial, and this is the one important question left in the case. The evidence now produced tends, as we have seen, to show that the Read notes were discharged in consequence of a secret agreement between the plaintiff and Read, and Read deposes for the purpose of endeavoring to enforce the notes against him after they had been repaid by the conveyance of this land, and thus discharged as against Read, the principal debtor. This evidence could not have been discovered by the defendant prior to or at the former trial, because of the secret agreement between Read and the plaintiff that the nature of the agreement between them should be concealed from the defendant, and the defendant seems to have proceeded with due diligence after he had knowledge of the existence of such agreement.

We have considered the objections made by the plaintiff to this application, but do not consider any of them substantial. The fact that Read was in court at the time of the trial and might have been called as a witness to prove this agreement, had the defendant had knowledge of it, is not an objection to the granting of a new trial. (*Bonynge* v. *Waterbury*, 12 Hun, 534.)

We have arrived at the conclusion, therefore, that the court below was justified in making the order that it did, and it follows that the order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and McLAUGHLIN, JJ., concurred.

Order affirmed, with costs.