BALDWIN'S BANK OF PENN YAN, Respondent, v. ALBERT L. SMITH et al., Appellants.

Banking — relation of bank and depositor — when one bank becomes agent of another to collect note payable at former bank and remit proceeds — failure of agent bank to remit for such note — makers of note not liable after default of bank where note was payable.

1. The relation of debtor and creditor, not of agent and principal, exists between a bank and its depositor. The money deposited becomes a part of the bank's general funds and it impliedly contracts to pay its depositor's checks, acceptances and notes payable at the bank to the amount of his credit. In discharging its implied obligation it pays its own money as a principal, not its depositor's money as an agent. It is a mere drawee answerable to the depositor if it fails to fulfill its implied contract obligation to pay notes and checks drawn by the depositor.

2. Where a bank which was the holder of a promissory note sent it, before maturity, to the bank where it was made payable "for collection and remittance" it constituted the latter bank its agent to collect the note and remit the proceeds.

3. Defendants made their promissory note payable at a bank and the plaintiff, another bank, became its holder in due course and sent it to the bank, where it was payable, "for collection and remittance." On the day the note fell due one of the makers telephoned to the latter bank and inquired if the note was there, and, being informed that it was, instructed the bank to charge it to the

makers' account, and was told that that would be done. Seven days later the bank failed without having remitted for the note, but during all that time the makers had more than sufficient funds at the bank to pay it. *Held,* that the defendants are not liable; that as to them the note was paid; that the acceptance by the bank of the verbal order to pay it and charge it to the makers' account amounted to an appropriation of their funds for that purpose; and, even if it be assumed the note was not paid, that the failure to secure payment was due to the neglect of the plaintiff's agent, and the loss resulting therefrom should fall on the one responsible for the fault and not on the makers. (*Indig* v. *National City Bank of Brooklyn,* 80 N. Y. 100, distinguished.)

*Baldwin's Bank* v. *Smith,* 155 App. Div. 881, reversed.

(Argued March 17, 1915; decided May 25, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 27, 1913, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lewis H. Watkins* and *E. W. Personius* for appellants. The plaintiff was negligent; its negligence resulted in its failure to receive the money on the note and in the defendants suffering damage in the amount thereof. (*Shipsey* v. *Bowery Nat. Bank,* 59 N. Y. 485; *Smith* v. *Miller,* 43 N. Y. 171.) The Watkins bank was the agent of the plaintiff bank to collect the note and remit the proceeds; it was negligent in doing this; such negligence was the negligence of the plaintiff. (*Nat. Revere Bank* v. *Nat. Bank of Rep.,* 172 N. Y. 102; *Nat. B. & D. Bank* v. *Hubbell,* 117 N. Y. 384; *Briggs* v. *Central Nat. Bank,* 89 N. Y. 183; *St. Nicholas Bank* v. *State Nat. Bank,* 128 N. Y. 26.)

*Spencer F. Lincoln* for respondent. The defendants, the makers of the note, have not performed their contract, and are, therefore, liable to the plaintiff. (*Indig*

v. *Nat. City Bank,* 80 N. Y. 100; *Caldwell* v. *Cassidy,* 8 Cow. 271; *Budweiser Brewing Co.* v. *Capparelli,* 16 Misc. Rep. 502; *Locklin* v. *Moore,* 57 N. Y. 360; *Hills* v. *Place,* 48 N. Y. 520.) The Farmers and Merchants' Bank was not the agent of the plaintiff, but was the agent of the defendants. (*Hills* v. *Place,* 48 N. Y. 522; *Indig* v. *Nat. City Bank,* 80 N. Y. 106; *Locklin* v. *Moore,* 57 N. Y. 360.) The plaintiff was not negligent to such an extent as to relieve the defendants, the makers of the note, from liability thereon; but the defendants were negligent in the performance of their contract as makers. (*Indig* v. *Nat. City Bank,* 80 N. Y. 100.)

MILLER, J. This is an action on a promissory note made by the defendants on the 11th day of August, 1910, payable to the order of W. N. Wise four months after date at the Farmers & Merchants' Bank, Watkins, N. Y. The plaintiff became the holder of the note in due course and before maturity sent it to the bank where it was made payable "for collection and remittance." On the 19th day of December, 1910, seven days after the maturity of the note, said bank suspended without having remitted for the note, although during all of that time defendants had more than sufficient funds to their credit with it to meet the note, and the bank had sufficient funds to pay it. On Monday, December 12th, the due date having fallen on Sunday, the 11th, one of the defendants called the president of the Watkins bank by phone and inquired if the note was there, and, being informed that it was, instructed the president to charge it to the defendants' account and was told that that would be done. The plaintiff made no inquiry or effort to ascertain the fate of the note until after the failure of the Watkins bank.

This is a case of first impression. The trial court relied on *Indig* v. *National City Bank of Brooklyn* (80 N. Y. 100). But that case is plainly distinguishable.

The defendant there received a note from the plaintiff for collection and sent it to the bank where it was payable, which received it the day it fell due and the next day sent a New York draft for the amount of the note, less exchange, to the defendant, who received it the following day. On the day the draft was forwarded to the defendant the sender closed its doors and the draft was not paid. The defendant was sought to be made liable for negligence in sending the note to the bank where it was made payable. But it was held that that did not constitute actionable negligence, for the reason that the same result might have ensued if the defendant had employed a subagent, who would have been justified in accepting the draft. Judge RAPALLO did say that the defendant did not constitute the bank to which it sent the note its agent to receive the proceeds. But his opinion received the concurrence of only two of the judges, and on that point has in effect been overruled by this court (*National Revere Bank of Boston* v. *National Bank of·the Republic of N. Y.*, 172 N. Y. 102), and is opposed to the weight of authority. (*Smith* v. *President, etc., Essex County Bank*, 22 Barb. 627; *Ayrault* v. *Pacific Bank*, 47 N. Y. 570; *Bank of Washington* v. *Triplett*, 1 Peters, 25; *Ward* v. *Smith*, 7 Wall. 447; *Cheney* v. *Libby*, 134 U. S. 68, 82.) Plainly by sending the note "for collection and remittance" the plaintiff in this case constituted the Watkins bank its agent to collect the note and remit the proceeds.

It is settled law that the failure to make demand at the time and place of payment agreed upon does not exonerate the debtor, whose readiness to pay at the specified time and place is merely equivalent to a tender. (*Hills* v. *Place*, 48 N. Y. 520; *Locklin* v. *Moore*, 57 N. Y. 360; and see cases cited in the opinions in those cases.) In that respect a note, which is an absolute promise to pay, is said to differ from a check, which is a mere order. But it is also the law of this state, although it was early

debated, that the failure to present a check within a rea-
sonable time does not exonerate the drawer, unless there
has been a loss. (*Little* v. *Phenix Bank*, 2 Hill, 425;
*Carroll* v. *Sweet*, 128 N. Y. 19.) The Negotiable Instru-
ments Law (Cons. Laws, ch. 38, section 147) provides:
" Where the instrument is made payable at a bank it is
equivalent to an order to the bank to pay the same for
the account of the principal debtor thereon," and this
court in *Ætna National Bank* v. *Fourth National Bank
of N. Y.* (46 N. Y. 82, 88) said per ALLEN, J.: " An
acceptance, or promissory note thus payable [*i. e.*, at a
bank] is, if the party is in funds, that is, has the amount
to his credit, equivalent to a check; and is in effect an
order, or draft on the banker, in favor of the holder, for
the amount of the note or acceptance." The reason for
exonerating the drawer of a check in case of loss resulting
from a failure to present it in a reasonable time is that the
drawing of a check is virtually an appropriation, though
not an assignment, *pro tanto* of the drawer's funds in the
bank. (See *Little* v. *Phenix Bank*, *supra*, at page 428.)
It is incumbent on the holder of the paper to secure pay-
ment, and loss resulting from his neglect should fall upon
him, not on the drawer, who has no further duty to per-
form. I am unable to perceive why the same reason does
not hold good in the case of a note payable at a bank where
the maker has funds to meet it at maturity, especially
since such a note is by statute made the equivalent of a
check. To the extent that he has appropriated his credit,
he is not called upon to look after it, but discharges his
duty by keeping his account good. None of the cases in
this jurisdiction holding that the maker of a note pay-
able at a bank is not exonerated by the holder's failure to
present it for payment involved the question of a loss
resulting from such failure. I find nothing in any of
them except the dictum in the *Indig* case to the effect
that the loss in such case falls on the maker.

The obligation to present the note, if it existed, bears

on the obligation to follow it up, when it is sent by mail to the payee bank "for collection." I shall not discuss the numerous cases in other jurisdictions holding that it is negligence *per se* to send a bill for collection to the drawee, or payee, bank. There may be, in that respect, a distinction between a note and a check or a bill of exchange and between liability of an agent to its principal and liability of the holder to the maker of a note. At any rate, the *Indig* case has generally been regarded as having settled the law in this state the other way and in accordance with what is believed to be the custom. However, by sending the note to the Watkins bank the plaintiff created a situation likely to, and which in fact did, mislead the defendants and result in loss. Upon being informed that the note was there, they directed that it be charged to their account. That was unnecessary (*Ætna National Bank* v. *Fourth National Bank of N. Y.*, *supra*, at page 88), but it indicated a lively interest in caring for their paper. Nothing more remained for them to do, as of course they could wait, as business men customarily do, for the return of the note with their canceled vouchers. The plaintiff's act thus led the defendants to suppose that their credit had been applied *pro tanto* to the payment of the note and lulled them into taking no further measures either to pay the note or to draw upon the credit thus appropriated.

However, it is unnecessary to decide whether the plaintiff owed the defendants the duty in the first instance to present the note or whether its failure to make any inquiry for a week after sending the note by mail to the payee bank for collection discharged the makers, loss having resulted. The foregoing are at least cogent reasons for holding that, in making the payee bank an agent to collect, the holder takes the risk of loss resulting from the latter's negligence and assumes responsibility for its acts within the scope of its authority. That

6

such an agency was created in this case is plain, even though, as was said in the *Indig* case, the mere sending of a note by mail to the bank where it is payable be in effect the same as presenting it over the bank's counter. The Watkins bank was the agent of the plaintiff to collect, but not of the defendants to pay. Although it has sometimes been said that by making a note payable at a bank where the maker keeps an account he constitutes the bank his agent to pay it, that statement will not bear analysis. The relation of debtor and creditor, not of agent and principal, exists between a bank and its depositor. (*Ætna National Bank* v. *Fourth National Bank of N. Y., supra; Jordan* v. *National Shoe & Leather Bank of N. Y.,* 74 N. Y. 467; *Straus* v. *Tradesmen's Nat. Bank,* 122 N. Y. 379; *Shipman* v. *Bank of the State of New York,* 126 N. Y. 318; *Cassidy* v. *Uhlmann,* 170 N. Y. 505.) The money deposited becomes a part of the bank's general funds. The bank impliedly contracts to pay its depositor's checks, acceptances, notes payable at the bank, and the like, to the amount of his credit. (*Citizens' National Bank of Davenport* v. *Importers & Traders' Bank of N. Y.,* 119 N. Y. 195.) But in discharging its implied obligation it pays its own money as a debtor, not its depositor's money as an agent. As has already been shown, a note payable at a bank, where the depositor has an account, is, in respect to being an order to pay, the precise equivalent of a check. Plainly then the bank bears no relation of trust or agency to its depositor in respect of paying either notes or checks. It is a mere drawee answerable to the drawer for a breach of its implied contract obligation to honor the draft. It necessarily follows that the transaction between the defendants and the Watkins bank amounted to payment or that the failure to secure payment was due solely to the negligence of the plaintiff's agent.

The plaintiff knew when it sent the note to its agent that if the makers were in funds it would be paid by

charging it to their account. Thus the subsequent transaction is to be viewed as though it had occurred directly between the plaintiff and the defendants, the latter being depositors of the former. What would constitute payment between the immediate parties should equally constitute payment though an agent for one intervened. The case in brief is this: A bank, the holder of a note, or the agent of the holder to collect, has funds in its hands upon which the makers are entitled to draw; after the note is due it is directed to charge the note against that credit and says it will do so. All that is necessary to constitute payment is the intention to make the application, which may be evidenced in a variety of ways, *e. g.*, by bookkeeping entries, by canceling the note and surrendering it to the makers, by the drawing of a check by the makers and its acceptance in payment by the bank. It must be borne in mind that the plaintiff selected an agent to collect knowing that in the usual course of business payment would be made by a mere transfer of credits. If the makers had actually gone to the bank and passed the necessary currency over its counter to pay the note with a direction thus to apply it, that would plainly have constituted payment. (*Smith* v. *President, etc., Essex Co. Bank, supra.*) If they had sent a check drawn on the bank to pay the note, the acceptance of it would have been *per se* an appropriation of the funds of the drawer, or to be accurate, of the funds subject to the drawer's order, to the payment of the note. (*Pratt* v. *Foote*, 9 N. Y. 463; *Commercial Bank of Penn.* v. *Union Bank of N. Y.*, 11 N. Y. 203; *Oddie* v. *National City Bank of New York*, 45 N. Y. 735.) The verbal order with the statement of the president of the bank that it would be acted upon was the equivalent in legal effect of a written order and its acceptance. It is to be noted that in the second of the cases just cited the bank to which payment was made was an agent to collect. That mere bookkeeping entries, or even the cancellation and sur-

render of the paper, is but evidence of, and does not con-
stitute, payment is established by the cases holding that,
where payment is made by a draft or check which is not
paid, the paper can be reclaimed and an action main-
tained upon it. (See *Burkhalter* v. *Second National
Bank of Erie, Pa.*, 42 N. Y. 538, and cases cited.) The
converse must be true, that payment may be made without
that particular evidence of it. A distinction must be noted
between cases like the last cited, where the drawee bank,
without being constituted an agent to collect, gives its
check, which is subsequently dishonored, and cases like
this in which the drawee bank is also an agent to collect.
In considering the cases on the question of payment, it is
essential to keep in mind the precise relation of the par-
ties. The agency of the Watkins bank is the vital fact
in this case. If it in fact accepted an appropriation of
the makers' credit with it in payment of the note, that
should constitute payment in view of the fact that the
plaintiff in sending the note to it for collection must have
expected that payment would be made in exactly that
way. That risk at least is taken in appointing a bank,
where a note is payable, agent to collect it. It is not
important how the bank evidenced its acceptance of the
makers' verbal order or whether it did anything to remit
the proceeds to its principal.

There are many cases in which stress has been laid on
the evidences of payment as, *e. g.*, canceling the note,
marking it paid, or charging it on the books to the maker,
but none, in this jurisdiction at least, holding that such evi-
dence is necessary to establish the fact of payment. The
act and the evidence of it must not be confused. The
act in this case was the acceptance of the makers' verbal
order to charge the note to their account. Making the
bookkeeping entries would merely have created evidence
of that act. When that verbal order was accepted the
makers' credit was irrevocably appropriated *pro tanto* to
the payment of the note precisely as though a written

order in the form of a check had been presented and accepted. It may be that something more than a mere state of mind on the part of the one to make the application is necessary to constitute payment and that the mental determination of the president of the Watkins bank, not accompanied by or resulting in any act, would not have sufficed. However, the acceptance of the makers' verbal order to make the application was an act fully as effective as, *e. g.*, the marking of the note paid as was done by the cashier in *Nineteenth Ward Bank* v. *First National Bank of South Weymouth* (184 Mass. 49), a case which in principle and in the reasoning of the court strongly supports the view that the transaction under consideration amounted to payment. Thereafter it was of no concern to the defendants what bookkeeping entries were made by the plaintiff's agent or whether it remitted the proceeds of the note.

If we lay refinements aside, the truth is that the actual default of the Watkins bank was in not remitting the proceeds of the note to its principal, a cogent reason for adhering to the view that the note was paid. It is not conclusive on the question of payment that the plaintiff might not have been entitled to assert that the assets in the hands of the assignee or receiver of the Watkins bank were impressed with a trust in its favor, because there might be a transfer of credits so as to constitute payment without actually setting aside a distinct fund which could be impressed with a trust. (See *People* v. *Merchants & Mechanics' Bank of Troy*, 78 N. Y. 269.) That point is not involved and need not be decided.

If, however, we assume that the note was not paid, the failure to secure payment was due to the neglect of the plaintiff's agent, and the loss resulting therefrom should fall on the one responsible for the fault.

For the foregoing reasons I advise that the judgments be reversed and, as the facts are undisputed and found, that the complaint be dismissed, with costs.

COLLIN, J. (dissenting). The action is to recover upon a promissory note owned by the plaintiff, a corporation, and made by the defendants as partners under the firm name of A. L. Smith and Son. The note was payable at "Farmers and Merchants' Bank," which was the firm name of three persons conducting, as partners, a banking business at Watkins, N. Y., with whom the defendants had then and through many prior years a general account as depositors and customers. On or before December 12, 1910, the due date of the note, the banking firm received by mail from the plaintiff the note for collection and remittance,— the plaintiff not having any account with them. They then owed the defendants and had on hand a sum greater than that due upon the note. On that day the defendant Walter S. Smith talked with Mr. Wait, their president, over the telephone and having been told by him that the note was then in the bank asked him to charge it to the account of the defendants. He said he would, but did not. The note was simply received by the banking firm; they did not remit to the plaintiff, or charge it to the defendants or credit it to plaintiff or cancel it, and nothing further than as stated in respect to it was done or said by any of the parties. They ceased doing business on December 17, 1910, and on December 19, 1910, made, a general assignment for the benefit of their creditors. Thereafter this action was brought. The judgment of the Trial Term in favor of the plaintiff was affirmed by the Appellate Division without opinion.

The learned and painstaking counsel for the defendants, in brief and argument, concede that the note was not paid, but vigorously assert and argue that the plaintiff was negligent in the two respects: (1) In that it sent the note for collection and remittance to the bank at which it was payable; and (2) in that it made no inquiry prior to December 17 or 19 concerning the note. In our deliberations, however, it is urged that the note was in

fact paid.  We are to determine whether or not such conclusion is accurate.

Payment is the fulfillment of an agreement to pay money by giving to the party entitled to receive it the sum agreed to be paid for the purpose of discharging the agreement, which is received by that party for the same purpose.  Before there can be a payment of a debt there must have been a complete discharge of it, and before there can be such discharge there must have been a full and complete performance of that which the promisor undertook to do.  It is the transfer or delivery of the money promised or its equivalent from the debtor to the creditor.  (*Kingston Bank* v. *Gay,* 19 Barb. 459; *Bronson* v. *Rodes,* 74 U. S. 229, 250; *Beals* v. *Home Ins. Co.,* 36 N. Y. 522, ·527; *Stokes* v. *Stokes,* 34 App. Div. 423, 431.)  Under the facts of this case, if the defendants transferred or delivered to the plaintiff the sum called for by the note, they paid it; otherwise they did not.

The note was in the possession of the banking firm as the agents of the plaintiff and they were authorized by it to receive and remit the money given by the defendants for the purpose of paying the note.  The plaintiff in sending the note to them for collection and remittance tendered them the agency and authority, which they in receiving and retaining it accepted, to demand its payment, to receive the money if paid, and to take the legal measures essential to the continuance of the liability of the parties to it if not paid.  (*St. Nicholas Bank of N. Y.* v. *State National Bank,* 128 N. Y. 26; *Ward* v. *Smith,* 7 Wall. 447; *Phipps* v. *Millbury Bank,* 8 Metc. 79.)  They became and were the agents of the plaintiff for those purposes and no other purpose whatsoever.

Inasmuch as they received the deposits of the defendants in the general account with them and owed therein the defendants a sum greater than that of the note, and the note was payable at their bank, they were under the authority and duty to transfer or deliver to the plaintiff

or themselves as its agents the sum due upon the note.
This conclusion is true because the relation between them
and the defendants was that of debtor and creditor at
common law.    They owed, at any time, as ordinary
debtors, to the defendants an amount equal to the sum
to the credit of the defendants then in the account.    In
opening the account and in receiving the deposit, they
agreed with the defendants, through legal implication,
that they would repay the loans of the deposits, to the
extent of their indebtedness, when and as authorized by
the checks or orders of the defendants in the usual course
of business.    This agreement was with and for the bene-
fit of the defendants alone and would not support an
action by the holders of the unpaid checks or notes drawn
or made by the defendants.    Between the banking firm
and such holders, there was no privity of contract.
(*Cragie* v. *Hadley,* 99 N. Y. 131; *Crawford* v. *West
Side Bank,* 100 N. Y. 50; *Commercial Bank of Penn.* v.
*Armstrong,* 148 U. S. 50.)    The defendants by making
the note payable at the bank authorized and ordered the
· banking firm as their debtors to pay, in accordance with
the implied contract between them, the note from the
funds to the credit of the defendants and thereby pay the
indebtedness of the defendants to the plaintiff and *pro
tanto* that of the banking firm to the defendants.    In
the respect of ordering the banking firm to pay the note,
it was the equivalent of a check drawn in the account by
the defendants to the banking firm for the purpose of
directing them to pay it.    (Negotiable Instruments Law
[Cons. Laws, ch. 38], § 147; *Ætna National Bank* v.
*Fourth National Bank of N. Y.,* 46 N. Y. 82.)

The implied agreement of the banking firm was not
self-executing.    The facts that the note was presented
to them and that they owed the defendants more than its
amount did not pay it or apply the moneys due from them
to its payment.    It required an act or acts upon their
part to make it effective.    Neither an agreement nor an

intention to pay a debt in and of itself pays it. Either
must be carried by an act into performance for its accom-
plishment or execution. Intention may determine whether
moneys are delivered in payment or in purchase or other
use, but to be operative must be expressed in an act or
acts. In order to have paid the note, the banking firm
must have applied or appropriated the moneys, in the
requisite amount, to its payment by either actually deliv-
ering them into their control as agents of the plaintiff, or
by transferring in like amount the credit owned by the
defendants to the plaintiff or by other unequivocal act
constituting or expressing payment. This conclusion will
be sustained, I think, by decisions hereinafter cited.
Indisputably they did not do any act tending to apply or
appropriate the moneys to its payment. The one act of
the banking firm relating to the payment of the note
was that of their president in stating to the defendants
that the note would be charged to the account of defend-
ants. Obviously, this was a mere repetition of the exist-
ing agreement which was not intensified in obligatory
effect or broadened by it. In receiving the loans of the
deposits, they had promised that they would repay them
as requested by the checks and orders of the defendants,
that is, that they would charge the note (and other notes
or checks) to the account of the defendants, if good for it.
Their duties and powers as agents of the plaintiff and as
the debtors of the defendants were as distinct and dif-
ferent as if they had been different individuals. (*Costello*
v. *Costello*, 209 N. Y. 252.) The plaintiff had not the
power by any act to pay the note. It could not charge
the account of the defendants with it. It could only ask
for and receive payment if made. It could not impart or
invest in its agents authority or power which it had not.
The statement that the note would be charged did not
place any moneys in the hands of the plaintiff's agents
for remittance to it or any moneys to its credit or give it
any right of action against its agents for moneys col-

lected and received, or pay any part of the debt of the banking firm to the defendants or lessen the amount to their credit in the account between them. The conversation was indeed an admission and an expression of a realization by both firms of the truth that the note had not been paid, but could be paid by debiting the defendants in account with its amount and crediting the plaintiff with and remitting to it the amount.

The defendants did not appropriate any part of the amount due them from the banking firm to the payment of the note by making it payable at the bank. To appropriate money is to set it apart or assign it to a particular use or purpose and to abnegate the right to use it for another purpose. (*Kelley* v. *Sullivan,* 201 Mass. 34.) Until the banking firm had actually accepted or paid the note, the defendants had the full and legal control of the moneys to their credit. While this note was lying in the bank, the defendants might have withdrawn those moneys or directed the payment of them to others than the plaintiff. (*Ætna National Bank* v. *Fourth National Bank of N. Y.,* 46 N. Y. 82, 88; *National Bank of Fishkill* v. *Speight,* 47 N. Y. 668; *Chapman* v. *White,* 6 N. Y. 412.) The note was never presented for acceptance, and had it been the acceptance could have been only by a sufficient writing signed by the banking firm and creating a privity of contract between the plaintiff and the banking firm. Their verbal promise to the defendants that they would charge it to their account could not be an acceptance. (Negotiable Instruments Law, §§ 220, 222; *Risley* v. *Phenix Bank of N. Y.,* 83 N. Y. 318.) The note was presented, however, not for acceptance but for payment, and payment alone of it constituted acceptance. Judicial decisions have indicated with clearness and certainty what constitutes the acceptance and payment by a bank of a check drawn upon itself, or a note there payable, and presented for payment. Morse in his well-considered work on banking said: "A credit given for the amount of a check by the bank upon

which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given. This rule has been applied where the bank held the check for several days, during which the drawer's account was not good, and then, the account becoming good, made the application." (2 Morse on Banks and Banking [4th ed.], § 451.) In *Oddie* v. *National City Bank of N. Y.* (45 N. Y. 735, 741) we said: "When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in *Pratt* v. *Foote* (9 N. Y. 463), but if it accepts such a check and pays it, either by delivering the currency, or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine." This principle was applied in *Consolidated National Bank of N. Y.* v. *First National Bank* (129 App. Div. 538; affirmed, 199 N. Y. 516). We have held or assumed in many decisions, without elaborate discussion, that a check presented for payment to the bank upon which it is drawn is never paid by the mere receipt, presentation and retention of it and is paid only by a transfer of credits, or by the actual delivery of the money, and turning it into a voucher by cancellation. (*Mayer* v. *Heidelbach*, 123 N. Y. 332; *Pratt* v. *Foote*, 9 N. Y. 463; *O'Connor* v. *Mechanics' Bank*, 124 N. Y. 324; *Briggs* v. *Central National Bank of N. Y.*, 89 N. Y. 182. See, also, same case, 61 How. Pr. 250; *National Butchers & Drovers' Bank* v. *Hubbell*, 117 N. Y. 384; *Attorney-General* v. *Continental Life Ins. Co.*, 71 N. Y. 325; *Commercial Bank of Penn.* v. *Union Bank of N. Y.*, 11 N. Y. 203, 214; *Kirkham* v. *Bank of America*, 165 N. Y. 132.) Other judical decisions are of like effect. (*Nineteenth Ward Bank* v. *First National Bank*, 184 Mass. 49;

*Exchange Bank* v. *Sutton Bank,* 78 Md. 577; *Bank of the
Republic* v. *Millard,* 10 Wall. 152; *Pollak Bros.* v.
*Niall-Herin Co.,* 137 Ga. 23; *Moore & Co.* v. *Meyer,* 57
Ala. 20; *Wilkinson* v. *Bradley, Wilson & Co.,* 54 Ala.
677; *Sutherland* v. *First National Bank of Ypsilanti,*
31 Mich. 230; *Pease* v. *Warren,* 29 Mich. 9; *Phillips*
v. *Mayer,* 7 Cal. 82; *Moore* v. *Norman,* 52 Minn. 83;
*Eyles* v. *Ellis,* 4 Bingham, 112.) In *Smith Roofing and
Contracting Co.* v. *Mitchell* (117 Ga. 772) the defendant
drew and delivered his check upon the Barnesville Bank
to the plaintiff, which transferred it to the Atlanta Bank,
from which the Barnesville Bank received it for collection
and remittance. The Barnesville Bank charged the
amount of the check to the account of the defendant and
marked the check "Paid." A few days thereafter it pro-
tested the check and returned it to the Atlanta Bank and
went into the hands of a receiver. The question con-
sidered by the court was whether the giving of the check
by the defendant, the presentation of that check at the
bank upon which it was drawn, and the action of the
bank in charging the amount of the check to the defend-
ant's account and canceling the check constituted such a
payment by the defendant of his debt to the plaintiff as
would discharge him from liability. It held: "The entry
on the books of the Barnesville Savings Bank, charging the
account of its depositor with the amount of the check, was
the same as if it had paid the money over its counter to
itself as agent for the bank which had sent the check for
collection; and the fact that it fraudulently withheld the
money from that bank and failed to enter the proper credit
to its account does not render any less complete the pay-
ment by the depositor. That money is now in the hands
of the agents of the payee of the check, and the drawer is
as completely discharged from any further liability on the
debt for which it was given as if he had paid the actual
money to one authorized by his creditor to collect it." In
*Nineteenth Ward Bank* v. *First National Bank* (184

Mass. 49) the action was against the defendant for money had and received through the collection of a note payable at and sent by the plaintiff to it for collection. The drawers of the check had a general deposit account with the defendant. The defense was that the note had not been paid. The other facts are sufficiently indicated by the quotation from the opinion: "The note itself was equivalent to a check. It stood exactly as though the makers owing the bank had delivered to it a check in payment. When the bank, through its cashier, wrote upon the face of the note in its own name as the indorsee and holder that it was paid, and perforated it and put it in the files as a thing paid, nothing more was to be done as to the payment. (At this point in his treatment of the note, the cashier was informed by telephone that the makers had made a general assignment for the benefit of their creditors. The custom of the bank was to make the proper record of the transaction upon the books at the end of the day.) By those acts there had been set apart and appropriated to the payment of the note so much of the deposit then standing to the credit of the makers as was sufficient for that purpose, just as though the makers had presented to the bank their check in payment of a claim due it from them. It is true that the proper records were to be made upon the books, but the payment is effected by the acts and not by the record, and was valid even without records. * * * So far as respected the plaintiff, the defendant had received the money for the note and was bound to remit it to the plaintiff."

The differences between such case and that at bar are neither insignificant nor obscure. In the former, the intention of the debtor bank was to pay then and there, and the intention was then and there expressed and executed by a series of acts thus described in the opinion of the court: "With these intentions (to pay then and to then remit) he (the cashier) begins. The note is before him. He first draws on a bank in Boston his check as

cashier of the defendant, payable to the order of the plaintiff for the amount of the proceeds of the note. It is to be observed that this is not the check of the makers nor is it made by the cashier as their agent, but in his capacity as agent of the defendant, and in the performance not of a duty owed by the makers but of a duty owed by the defendant to the plaintiff. It is not the check by which the note was paid because none was needed, but was the check by which the proceeds were to be transmitted by the defendant to the plaintiff. He then makes a memorandum of this check upon a block, stamps upon the face of the note 'Paid Oct. —, 1901, First National Bank, So. Weymouth, Mass.,' and perforates the note in three places. He then puts the note thus stamped and mutilated in the file with his checks, so that the proper record of the transaction may be entered at the end of the day upon the permanent books. So far he has gone when he is called to the telephone and notified that the makers have made an assignment for the benefit of their creditors, and he is requested by the assignee to hold the account. He replies that there is one (meaning this) note which he had paid or 'made a check for it.' Soon afterwards, at the request of the assignee, he withheld the check he had drawn and undertook to retrace his steps." In the case at bar, the banking firm had the intention which they expressed in words to pay at some future time. They did no act; they said nothing except that the note would be charged to the account of the makers. The difference between the two cases, in principle though not in the facts, is as broad and vigorous as is that between these supposititious transactions: (1) A creditor by a promissory note presents it on its due date to the maker and asks that he pay it. The maker delivers to the creditor the amount of and receives the note and marks it paid. The maker there had upon the presentation of the note the intention to pay it instantly, which he then and there expressed and executed by his acts, as

did the cashier in the *Nineteenth Ward Bank* case, and the note would be paid as in that case. (2) A creditor by promissory note presents it on its due date to the maker and asks that he pay it. The maker replies that he would do so, and thus ends and completes the transaction. Nothing more said, nothing whatever done. The maker there had upon the presentation of the note the intention to pay it at some future time, and expressed that intention in words. Such is the case at bar: His intention or promise to pay — a mere reiteration of that in the note in the supposititious case, and that in receiving the deposits and opening the general account in the case at bar, and not one whit more effective for any purpose — would not constitute payment. Mere words cannot create or constitute the fact that the note was paid. The defendants requested or ordered the banking firm to pay the note, at maturity, upon the presentation, by making it payable at their bank, and the banking firm agreed to do so by receiving the deposits, as I have already stated. A second order by the defendants could not be more efficacious in any particular. If the order of the defendants was to be accepted by the banking firm, rather than performed by payment, acceptance could be effected only in the manner and form directed by article XII of the Negotiable Instruments Law, that is, by a writing expressing acceptance, signed by the banking firm. No acceptance was, however, asked or given. Payment alone was asked and the sole and exclusive response of the banking firm was the statement that the note would be charged to the account of the makers — a mere reiterated promise to pay.

In *First National Bank of Murfreesboro* v. *First National Bank* (127 Tenn. 205) the action was by the plaintiff bank as holder of checks against the defendant for money had and received as a collecting bank. The defendant sent the checks to the bank upon which they were drawn for collection and remittance. The quotation from the opinion indicates the other facts suffi-

ciently: "We are also of opinion that there was no acceptance of the checks under the facts of this case. 'Acceptance,' as defined in Negotiable Instruments Law, 'means an acceptance completed by delivery or notification.' There was no delivery of the checks after they were marked paid in this case. The evidence shows that the checks were marked 'Paid' with a stamp provided for that purpose, and placed upon a cancellation hook, on October 31st, to be entered upon the book of the bank on November 1st, in the event remittances were received before then to cover the checks. On November 1st, remittances not being received, the check was taken from the hook and the cancellation mark erased. This was done, it is true, by the drawee as collecting agent of the holder; but it is also true that the acceptance was not completed by delivery, and, of course, there was no notification. Where the drawee is acting in the dual capacity of collecting agent of the holder and as drawee, there can be no acceptance by delivery until the bills are passed through the books of the bank, charging the account of the drawer and crediting the account of the remitting bank, and making a completed transaction."

The banking firm did no act which created privity of contract between them and the plaintiff. The note was not marked or stamped paid, or canceled, or filed as collected or paid. They apparently did not see or touch it after taking it from the envelope in which it came. They did not segregate the amount due or in any way appropriate it to the payment of the note or place it to the credit of the plaintiff. The note was not charged in the account of the defendants. The amount to their credit was not lessened or affected, and was at the disposal and under the legal control of the defendants until the bank closed on December 17, 1910. The money in the bank was to the credit of the defendants and not to the credit of the plaintiff and never for a moment was subject to plaintiff's order or control. The bank kept the

money as a deposit to defendants' credit and thereby retained the credit as the property of the defendants. It is, of course, manifestly true that the violation by the banking firm of the implied contract with the defendants or their negligence as the agents of the plaintiff in failing to protest the note did not pay it or sustain an action by the plaintiff against the defendants for money had and received. No more, as I view them, do the facts that the note was received by the banking firm and the credit in the account with the defendants was greater than its amount.

Neither the facts nor the briefs or arguments of counsel present the question as to whether or not failure to present a note at its maturity at the place where payable, the maker's account there being good for the note, subjects the holder to the loss ensuing through the failure of the bank. In the present case, the note was in the bank at its maturity. Without entering upon the discussion of the question, I will state these conclusions, which I understand to exist: A note is an absolute and unconditional promise to pay and it need not, as between the holder and maker, be presented at any time at the place where payable. (*Parker* v. *Stroud,* 98 N. Y. 379; *Ward* v. *Smith,* 7 Wall. 447; *Cheney* v. *Libby,* 134 U. S. 68; *Adams* v. *Hackensack Imp. Com.,* 44 N. J. L. 638; *Hills* v. *Place,* 48 N. Y. 520; *Wolcott* v. *Van Santvoord,* 17 Johns. 248; *Locklin* v. *Moore,* 57 N. Y. 360.)

A check is a convenient means adopted by a debtor and his creditor whereby the debt may be paid, under the agreement, implied by law, that it shall be exercised forthwith, and the debt cannot be enforced until it has been presented and dishonored. If loss ensues by reason of the failure to present as agreed, it falls upon the holder. (*Chapman* v. *White,* 6 N. Y. 412; *Harker* v. *Anderson,* 21 Wend. 372; *Hibernia National Bank* v. *Lacombe,* 84 N. Y. 367; *Martin* v. *Home Bank,* 160 N. Y. 190; *Bradford* v. *Fox,* 38 N. Y. 289.)

7

98   Oswego Falls P. & P. Co. *v.* Stecher Lith. Co.

[215 N. Y.]          Statement of case.          [May,

While there is a marked diversity of judicial opinion in regard to the question whether the holder of a negotiable instrument may send it for collection and remittance to the bank upon which it is drawn or at which it is made payable, free from the risk of loss through the insolvency of the collecting and paying bank, our opinion and the wiser one, we think, is that expressed in *Indig* v. *National City Bank of Brooklyn* (80 N. Y. 100) that the holder is not negligent therein as a matter of law.

The liability of the defendants was not discharged by the failure of the plaintiff to make inquiry of the Farmers and Merchants' Bank as to the payment of the note. The trial court found as a fact that such failure was "not such negligence on its part as will discharge" the liability of the defendants. There is in the evidence support for the finding. A holder of negotiable paper does not, as a matter of law, relieve the obligor from liability by failing through the five or seven days next following its maturity to inquire of the collecting bank concerning its payment.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., CHASE and CARDOZO, JJ., concur with MILLER, J.; SEABURY, J., concurs in result; COLLIN, J., reads dissenting opinion, and CUDDEBACK, J., concurs.

Judgment reversed, etc.