O’CONNELL, Justice.
This is an action to foreclose a mortgage, brought by the Dees, husband and wife, plaintiffs below, appellees here, against the Cullisons, husband and wife, defendants below, appellants here. From a summary final decree of foreclosure the defendants appeal. A. T. McNeal, Jr., who was pledgee of an interest in the mortgage and one of the notes in question, was made a defendant below and is one of the appellants here.
The Cullisons executed two promissory notes, one to Mr. Dees and one to his wife. Both notés were secured by the same mortgage. The note to Mrs. Dees, it is admitted, was not in default at the time this action was instituted. However, the mortgage contained a provision that jf either note became in default both notes could he declared in default and time for payment of the sums due thereunder accelerated. Mr. Dees claims that the note due him was in default, Mrs. Dees elected to declare hers in default also and this suit was brought on June 14, 1954.
After the execution of the notes and mortgage by the Cullisons to the Dees, Mr. Dees executed a promissory note in amount of $6,000, payable in five equal installments together wtih interest payable annually, to Mr. Roquemore. This note will be referred to as the Dees note. To secure the- payment of this note Mr. Dees assigned the note given him by the Culli-sons, which note was originally in amount of $16,500 and was payable in monthly in-' stallments of $150 including interest, and also assigned to Roquemore all of his interest in the mortgage given by the Culli-sons to secure the payment of both notes to the Dees. This note in amount of $16,-500 given by the Cullisons to Mr. Dees will be referred to as the Cullison note. At various times Roquemore-made demand on the Cullisons for payment on the note held by him as security but no payments thereon were made by the Cullisons prior to June 7, 1954.
On June 7, 1954, A. T. McNeal, Jr. purchased from Roquemore the Dees note and received as security an assignment of the Cullison note and an assignment of Mr. Dees’ interest in said mortgage, which assignment of mortgage was recorded on the same day.
McNeal received physical possession of the Dees note on June 9, 1954. Early on the morning, of that day Mr. Dees orally advised McNeal not to accept any payment from Cullisons on the Cullison note which McNeal held as security. About the same time that morning a letter dated June 9, 1954, signed by Mr. Dees, was delivered to the Cullisons advising that their note to him was delinquent and that both. Mr. Dees and his wife were declaring the full amount of both the notes to Mr. and Mrs. Dees presently due and payable. Later that morning Mr. Dees and his attorney met McNeal in the office of the attorney and, there, according to an affidavit made by McNeal, Mr. Dees’ attorney offered to pay McNeal the full amount of the $6,000 note, plus interest to that date. ' The affidavit further stated that McNeal accepted the offer, but called to the. attention of Mr. Dees and his attorney that the Cullisons had prior to that time paid to McNeal $1,-950 to apply on the Cullison note; that Mr. Dees’ attorney demanded that McNeal give to him the Dees note with receipt for payment in full, and with, a statement that no payments had been made by the Cullisons other than as shown by the schedule of payments on the reverse of the Cullison note; that McNeal refused to give such a statement because -he could not in truth do so and thereupon Mr. Dees’ attorney refused to pay off the Dees note. The statements contained in this affidavit are not controverted or rebutted in any. manner in the record before us.
*622 It appears that McNeal purchased the Dees note from Roquemore, with the collateral security of the Cullison note and mortgage interest, in order to help the Cul-lisons and that prior to purchasing said note he agreed with the Cullisons that he would lend them a sufficient amount of money to catch up the payments they owed on the note to Mr. Dees. He did not require the Cullisons to execute any evidence of the loan, nor did he indicate that such payments were made by the Cullisons by marking such payments on the schedule of payments on the reverse of the $16,500 note. He did not note a credit to Dees on the reverse of the $6,000 note. Nevertheless, McNeal testified in a deposition taken by Plaintiffs and stated in his affidavit that Mr. Dees was entitled to credit in the amount of $1,950 on the $6,000 note made by Mr. Dees and then held by McNeal and that Dees could pay the note off at any time for the principal sum, plus interest, less $1,950, the sum which he had loaned the Cullisons.
We are required to determine, under the facts above recited, first, whether or not there was a genuine issue of material fact so as to make the entry of a summary final decree proper. We believe that there was no issue of fact necessary tO' be determined by trial and that entry of a summary final decree was not improper for this reason. There was no' dispute as to the facts. There was dispute as to the legal effect of the evidence before the court below and as to the applicable law.
We must next determine whether the loan by McNeal to the Cullisons, although not in writing, constitutes payment on the Cullison note, then held by McNeal as pledgee.
We hold that the loan by McNeal to the Cullisons, as affirmed by McNeal’s statements to Mr. Dees and his attorney when they sought to pay off the $6,000 note and as again affirmed by his affidavit and his testimony in the deposition in the record in this cause, constituted payment on the $16,500 note owed by the Cullisons to Mr. Dees.
The trial court held, in a finding of fact entered by it, that the loan of $1,950 by McNeal to the Cullisons was made “* * without disturbing his [McNeal’s] pocketbook, his bank account, or any other asset owned by him * * Following this theory the court concluded that such did not constitute payment on the mortgage note by the Cullisons and they were in default.
We cannot agree with the chancellor in his findings or reasoning.
The Dees note was an asset in the hands of McNeal. His affidavit and statements in the deposition in the record indicate that by his loan to the Cullisons he had reduced the amount of this asset by $1,950 and had simultaneously reduced the security for the Dees note, i. e. the Cullison note and mortgage, by an equal sum. He accepted in lieu of these assets a promise from the Culli-sons to pay an equal sum. The transaction did disturb an asset in McNeal’s hands.
To determine whether such a transaction constitutes payment we must, of necessity, look to the effect it had on Mr. Dees. McNeal was entitled to collect the sums due under the Cullison note and to apply such payments to the reduction of the Dees note until the Dees note was paid in full; he was then to pay any surplusage to Mr. Dees. First National Bank of Gadsden v. Morgan, 1925, 213 Ala. 125, 104 So. 403. When Mr. Dees approached McNeal to discharge the $6,000 note, McNeal agreed to accept payment therefor but advised Mr. Dees and his attorney that the Cullisons had paid $1,950 and therefore that the sum offered in payment by Dees, $6,164, was excessive by $1,950. We do not see how such a transaction can be interpreted to be other than payment of this sum, insofar as Mr. Dees is concerned, since he received credit on his obligation to McNeal in the amount of $1,950. To the effect that payment can *623 be made by means other than actual exchange of money, see 70 C.J.S., Payment, § 32, page 242.
The. fact that McNeal did not demand written evidence of the loan to'the Cullisons and did not record the payment from them, on either the Cullison or Dees note, is not controlling in determining whether payment was in fact made. While such acts, if performed,' would constitute evidence of a loan and evidence of payment such are not necessary to establish that there was a loan made or to establish the fact of payment. Baldwin’s Bank of Penn Yan v. Smith, 1915, 215 N.Y. 76, 109 N.E. 138, L.R.A.1918F, 1089.
After taking into account 1 a six (6) months moratorium or mortgage payments, agreed upon by the Dees and Cullisons, and the three (3) months grace period provided in the Cullison mortgage, the trial court found that the Cullisons were in default for “* * * at least two (2) and possibly four (4) installments * * In view of our decision that the transaction above described constituted payment on the Cullison note in amount of $1,950, which is equal to thirteen payments of $150 each, it follows that the Cullisons were not in default and no right of foreclosure existed.
Having reached the decision above recited we feel it unnecessary to determine whether the Dees had the right to foreclose the Cullison note to Mr. Dees - and the mortgage interest held by the pledgee, McNeal, without first satisfying or making an unconditional tender of payment of the Dees note for which the Cullison note and mortgage interest were held as security.
For the reasons expressed above the summary final decree appealed from is reversed with directions that further proceedings be had in accordance with the views expressed herein.
DREW, C. J., and THOMAS and ROBERTS, JJ-, concur.