NATIONAL REVERE BANK OF BOSTON, Respondent, v. THE NATIONAL BANK OF THE REPUBLIC OF NEW YORK, Appellant.

1. APPEAL — UNANIMOUS AFFIRMANCE — DISPUTED FACTS. Upon unanimous affirmance below of the judgment recovered by a party, the disputed facts will be deemed to be settled in his favor.

2. DIRECTION OF VERDICT — INSTRUCTIONS — The denial of motions made by counsel on both sides for the direction of a verdict and the submission of the case to the jury cannot be held to have prejudiced either party provided the jury decided the case as the court ought to have decided it, nor in such case is the conduct of the court in charging or refusing to charge the jury material.

3. EVIDENCE — PRESUMPTION OF OWNERSHIP. Possession by a bank of drafts which it claims to own and forwards to a correspondent for collection gives rise to the presumption that such bank owns the drafts and entitles the bank to be treated in law as the owner in the absence of any distinct proof that it was not the owner of the paper.

4. Banking — Collection.  In the absence of proof that paper for-warded by one bank to another was sent and received for some other pur-pose than its collection, the employment to collect, although not expressed in words, will be presumed from the fact that the bank receiving the paper had a correspondent at the place of payment, while the bank send-ing the paper did not, where the previous course of business between the two banks tends to confirm the inference.

5. Same.  That one bank transmitted drafts to another in the usual course of business, and that the latter mailed it to a correspondent at the place where it was payable, imports, in the absence of any special agree-ment, an undertaking to perform the ordinary duty of collecting the paper and accounting for the proceeds, if paid, and if not paid to return the drafts unimpaired as to the liability of all the parties.

6. Agency.  A bank which is the collecting agent of another does not cease to be such because it is the drawee upon which the drafts forwarded to it for collection are drawn.

7. Evidence — Presumption of Solvency.  In an action to recover damages for the failure of a bank to collect drafts or to take steps to charge the indorser thereon, it will be presumed, in the absence of proof to the contrary, that the indorser was solvent.

8. Appeal — Objection Urged for First Time.  A defense in an action against a bank which failed to collect or to charge the indorser upon paper sent to it for collection that the paper may not have been actually indorsed or that the indorsement may have been without recourse or with waiver of protest cannot be urged for the first time on appeal.

9. Banking — Duty as to Collections.  It is the duty of a bank with which paper is left for collection to send it forward, make proper demand of payment and receive and account for the money or take the proper steps to charge the indorser.

*Nat. Revere Bank* v. *Nat. Bank of Republic,* 54 App. Div. 342, affirmed.

(Argued June 16, 1902; decided October 7, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 17, 1900, affirming a judgment in favor of plain-tiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George S. Hastings* for appellant.  It was not negligence for the defendant to mail for payment the checks received from the plaintiff directly to the drawee bank.  By mailing

them directly to the bank upon which they were drawn upon the day they were received the defendant discharged its full duty to the plaintiff, adopted a convenient method of pre-, senting such checks for payment and pursued the ordinary and reasonable methods of securing payment. (*Shipsey* v. *B. Nat. Bank*, 59 N. Y. 491; Morse on Banks & Banking [3d ed.], 427; *Heywood* v. *Pinckney*, L. R. [9 Q. B.] 428; *Prideaux* v. *Cord & Co.*, L. R. [4 Q. B.] 461; *Hare* v. *Henley*, 10 C. B. [N. S.] 485; *Indig* v. *N. C. Bank*, 80 N. Y. 105.) The defendant is entitled to any doubt disclosed by the record. (*Graham* v. *Machado*, 6 Duer, 514; *Myers* v. *Machado*, 6 Abb. Pr. 198; Stephen on Pleadings [5th ed.], 414–427.; *Vanderslice* v. *Newton*, 4 N. Y. 130.)

*George A. Strong* for respondent. Defendant was liable to plaintiff for the loss of the indorser on the two checks. This loss was caused by its negligence. Upon the evidence a verdict should upon that ground have been directed in plaintiff's favor. (*Potter* v. *M. Bank*, 28 N. Y. 641; *Carroll* v. *Sweet*, 128 N. Y. 19, 22; *Indig* v. *Nat. City Bank*, 80 N. Y. 100; *Martin* v. *Home Bank*, 160 N. Y. 190; *Kirkham* v. *Bank of America*, 165 N. Y. 132.) Upon the question of actual subsequent payment of the checks there was nothing for the jury, and a verdict should have been directed for plaintiff on this ground. (*Ayrault* v. *Pacific Bank*, 47 N. Y. 570; *Naser* v. *F. Nat. Bank*, 116 N. Y. 492; *S. N. Bank* v. *S. N. Bank*, 128 N. Y. 26; *M. Nat. Bank* v. *Goodman*, 109 Penn. St. 422; *D. Nat. Bank* v. *Anglo-Amer. Co.*, 117 Ill. 100; *Briggs* v. *C. Nat. Bank*, 89 N. Y. 182; *Pratt* v. *Foote*, 9 N. Y. 463; 10 N. Y. 599; *Com. Bank* v. *Union Bank*, 11 N. Y. 203; *Van Allen* v. *Am. Nat. Bank*, 52 N. Y. 1.)

O'BRIEN, J. The judgment recovered by the plaintiff at the trial has been unanimously affirmed below and hence the facts, so far as they were in dispute, must in this court be deemed to be settled in its favor. At the close of the trial both sides moved for the direction of a verdict in its favor

but the trial judge refused both requests and of his own motion submitted the case to the jury and a verdict was found for the plaintiff. In moving for the direction of a verdict at the close of the case counsel on both sides contended that there was no question of fact for the jury. The case has been argued in this court on both sides upon the theory that there was no dispute about the facts. Counsel differ, however, very widely with respect to the legal effect of the facts, each side claiming that upon the undisputed facts the judgment should have been in his favor. The submission of the case to the jury cannot be held to have prejudiced the parties or either of them provided the jury decided the case as the court ought to have decided it.

Although both sides asked the court to decide the case as matter of law the record contains numerous requests in behalf of the defendant to the court to charge the jury on certain propositions which are stated, which requests were refused and exceptions taken. These exceptions can be of very little consequence in the case unless there was some material question of fact involved in the controversy. If the case turned upon questions of law arising upon undisputed facts as counsel on both sides insisted at the close of the case, and still insist, what the learned trial judge said to the jury, or omitted to say, is not material if the case was correctly decided by the jury.

On the 29th of August, 1895, the defendant received by mail from the plaintiff a sight draft or check drawn by one Watson two days before upon the Kearney National Bank of Kearney, Nebraska, payable to the order of and indorsed by one Lydia A. Scott for $3,500. On the next day it received in the same way another draft or check drawn two days before by the same party upon the same bank to the order of and indorsed by the same payee for $2,500. This paper was sent to the defendant as is claimed for collection and was mailed by the defendant on the day of its receipt to the Nebraska bank upon which it was drawn. Nothing was heard from it until September 13, 1895, when the defendant received two

drafts for the same drawn upon itself by the Nebraska bank. The defendant protested these two drafts on the ground that it had no funds of the drawer to pay them and then forwarded the protested drafts to the plaintiff in discharge of whatever duties it assumed concerning the collection of the drafts originally delivered to it, but the plaintiff refused to receive them and returned them to the defendant. In the meantime the Nebraska bank had failed and suspended payment of all its obligations, including of course the two drafts upon the defendant, and being insolvent passed into the hands of a receiver. The two Watson drafts sent to the defendant by the plaintiff for collection were never returned and were never protested, so that it is claimed that the payee and indorser was discharged. The plaintiff's cause of action, therefore, rests upon the claim that the defendant never collected the paper sent to it for collection and never returned it or fixed the liability of the indorser by protest. The questions in this case are to be determined largely, if not entirely, upon legal presumptions. In the various and complicated transactions of banks in dealing with commercial paper with each other or with individuals certain acts or things which may transpire have a certain legal significance which courts are bound to declare in the absence of proof that such acts indicate something else. The defense to this action consisted principally in an attempt to show that certain facts are to be given only a limited effect or a peculiar and exceptional character without any proof to show that such was the agreement or intention of the parties, or that they are to be held to mean something different from their ordinary legal import. For instance, it is asserted without any distinct proof that the plaintiff was not the owner of the paper, but it alleged that it was and having the possession of it transmitted it to the defendant as it claims for collection. These facts entitle the plaintiff to be treated in law as the owner. So, also, it is asserted that the defendant was not the plaintiff's collecting agent, but assumed only a limited and special duty, namely, to send the paper to the bank which was the drawee for the

purpose of presentation, all of which the plaintiff could have done itself just as well. But the plaintiff had no correspondent at the place of payment and the defendant had, and hence the act of sending the paper by mail to the defendant, when taken in connection with the previous course of business between the two banks, imports an employment of the defendant by the plaintiff to collect the paper, and should be so understood in the absence of proof that the paper was sent and received for some other purpose. The employment to collect, while not expressed in words, is a legal inference from the previous relations of the parties and the nature of the business. It was open to the defendant to show that the relations of the parties were in fact otherwise, but until such proof was given the transaction must be given its ordinary legal effect.

In this state a bank receiving commercial paper for collection is, in the absence of some special agreement, liable for a loss occasioned by a default of its correspondents or other agents selected by it to make the collection. Where a sub-agent collects but fails to pay over and becomes insolvent, such insolvency will not shield the collecting agent from liability for the loss. (*St. Nicholas Bank* v. *State Nat. Bank,* 128 N. Y. 26 ; *Briggs* v. *Central Nat. Bank,* 89 N. Y. 182.) The collecting bank is liable for any neglect of duty occurring in the process of collection, in consequence of which any of the parties to the paper are discharged. (*Ayrault* v. *Pacific Bank,* 47 N. Y. 570.) If the facts of this case bring the defendant within the scope of these decisions it became liable to the plaintiff, and the judgment must be upheld. The principal defense developed by the learned counsel for the defendant in his argument in this court is that the defendant was not an agent to collect, but merely to forward the drafts to the Nebraska bank upon which they were drawn, and that having promptly done that it is not liable for any loss that the plaintiff may have sustained. The answer does aver as matter of fact that it was not such collecting agent, but there was no proof of any special agreement to take the transaction out of the general

rule.  When it was shown that the plaintiff transmitted the paper to the defendant in the usual course of business and that the latter mailed it to the bank where it was payable these facts *prima facie* import an undertaking on the part of the defendant to perform the ordinary duty of collecting the drafts and accounting to the plaintiff for the proceeds if they were paid and if not paid the return of the draft unimpaired as to the liability of all the parties.  If there was any special agreement express or implied which relieved the defendant from any of these duties which grew out of the nature of the transaction it assumed the burden of proof in that respect, and as already stated it gave no proof of any such fact.  The legal character of the transaction, in the absence of such proof, must, therefore, be held to be the ordinary case of one bank undertaking to collect paper sent to it by another bank. The complaint distinctly alleges that such was the transaction and such the purpose for which the defendant received the paper, and the learned counsel for the plaintiff contends that there is no distinct denial of this allegation in the answer. The answer is not very distinct on that point when read as a whole, but no such objection was made at the trial and we should now assume that the answer in that respect was sufficient, but there was no proof to show that the transaction was other than the ordinary one or that there was any special agreement limiting or reducing the defendant's liability to that of a mere forwarding agent.

But the learned counsel for the defendant further contends as matter of law that since the defendant sent the drafts to the bank where they were payable and upon which they were drawn, the drawee did not become the agent of the defendant.  It is said that the case of *Indig* v. *National City Bank* (80 N. Y. 100) sustains this proposition, but it does not seem to us that it does.  With respect to that case generally it may be said, as it has been said before by this court in the *St. Nicholas Bank Case* (*supra*), that it was a border case the doctrine of which was not to be extended, and, indeed, it has been already explained and limited in *Briggs* v. *Central Nat. Bank* (89 N.

Y. 182). But no one will claim that it is not competent for the collecting bank to make the drawee bank in such a case its agent in the same way as if the paper was payable at some other place. If it had been shown in that case, as it was in this, that for several years before the transaction the drawee bank had been the collecting agent of the bank transmitting the paper, doubtless it would have been held that the relation of agency existed between the two banks. The court was careful in that case to emphasize the fact that there was no indorser on the paper, and that all that was to be done was to demand payment. In the case at bar there was an indorser who has been discharged, and the consequence is that *prima facie* the plaintiff has been damaged in a sum equal to the face of the paper (*Potter* v. *Merchants' Bank*, 28 N. Y. 641), so that the distinction between that case and this is to be found in the wide difference in the facts. Moreover, the *Indig* case does not really decide any such proposition as is claimed. It will be seen from the report that three members of the court concurred in the proposition now asserted. Three other members dissented entirely and the chief judge concurred with the three first mentioned on the question of damages and this resulted in the reversal of the judgment below. Hence it is very obvious that the only question decided in that case was the point presented in the opinion relating to the question of damages.

The drafts in question do not seem to have been produced at the trial, but since they had been delivered to the defendant it was bound to produce them if either their form or contents was material or to account for their absence in some way. It is suggested that the payee may have been insolvent or may not have actually indorsed the paper or if she did it, may have been without recourse or with waiver of protest. It was open to the defendant under the answer to show that the payee and indorser was insolvent and that the plaintiff was, therefore, not damaged by the failure to protest the paper. That was matter of defense, but no proof was given upon that point and in the absence of such proof the presumption is that

the indorser was solvent. The admissions in the pleadings and the general course of the trial have settled for this court the other hypothetical defenses referred to. No such suggestions were made at the trial nor was any point raised that the evidence was in these respects defective. After judgment this court must presume that the paper was regularly indorsed by the payee without any special restriction. The defendant cannot urge such defenses now after remaining silent at the trial. When commercial paper is sent forward by a bank to the place of payment the presumption is that it is in such condition as to authorize a demand of payment and the surrender of the same to the proper party upon payment being made. The legal effect of the plaintiff's proof was to cast upon the defendant the duty of sending forward the drafts for collection, to make proper demand of payment, to receive and account for the money received in payment, and to take proper steps to charge the indorser if the paper was not honored, and since the defendant failed to account for the proceeds or to return the paper it was liable to the owner.

This view of the case would entitle the plaintiff to an affirmance of the judgment, but there is another view that tends to strengthen this position. Of course, if the drawer had funds in the hands of the drawee, the Nebraska bank, or if the paper was paid at that bank, which was the sub-agent of the defendant, the latter would be liable to the plaintiff, notwithstanding the failure of its western correspondent. We have the two facts that the latter never protested the paper, but, before it closed its doors, transmitted its own drafts upon the defendant in payment of the paper sent for collection. It is a reasonable presumption under such circumstances that the paper was honored and paid. So, also, if the drawee bank in Nebraska had sufficient funds with the defendant to pay the two drafts which it drew upon it in the regular course of business in order to account for the collection, then the defendant should have honored the drafts instead of protesting them and transmitting them to the plaintiff in discharge of the obligation which it assumed when

it undertook the collection of the original paper. It was shown that some six weeks before the drafts were drawn upon the defendant by its sub-agent, the Nebraska bank, the latter had on deposit ·with the defendant at least $40,000, and there was no proof given to show what had become of it. We do not mean to say that this was even *prima facie* proof that the defendant had funds to honor the drafts drawn upon it by its western correspondent when they were received although it did honor all such drafts up to the day before, but the whole transaction shows or tends to show that the paper transmitted by the defendant to the Nebraska bank was paid in some way, and that the latter, supposing it had funds with the defendant sufficient for that purpose drew upon it in order to account for the money represented by the paper sent to it for collection. While these facts of themselves might not constitute, as matter of law, a ground of legal liability, they tend strongly to support the legal inferences as to the nature of the transaction as creating an obligation to collect the paper and the defendant's failure to discharge that obligation. In whatever way the transaction is viewed it is impossible to avoid the conclusion that the delivery of the paper by the plaintiff to the defendant for collection imposed upon the latter obligations and duties that it has failed to discharge. It neither collected the paper nor procured it to be protested in order to save the liability of the indorser.

The exceptions taken at the trial and to the charge presented by the record involve no question of law pertinent to the controversy, and the judgment should, therefore, be affirmed, with costs.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment affirmed.