PAUL A. ISLER et al., Copartners under the Firm Name of ISLER & GUYE, Appellants, v. THE NATIONAL PARK BANK OF NEW YORK, Respondent.

**Banks and banking — collections — duty of bank receiving draft to collect by its agent in foreign country — when bank liable for negligence of its agent in delivering bill of lading to debtor before payment of draft for same — when bank cannot escape liability under alleged agreement with customer that it will not be liable for loss occasioned by default or negligence of its agent.**

1. A bank receiving commercial paper for collection is, in the absence of some special agreement, liable for a loss occasioned by default of its correspondents or other agents selected by it to make the collection. An agreement exempting it from liability should be so clearly stated that its customers may know in the exercise of ordinary intelligence the extent of the exemption.

2. Where defendant, a bank, accepted for collection a draft drawn upon a foreign consignee for the price of goods sold and shipped to such consignee by plaintiff, the fact that the letter of the bank accepting from plaintiff the draft for collection, stated that " collections are accepted by us only upon the express conditions that no responsibility is assumed by us for any failure or delay in collecting or remitting," such statement does not protect the bank from liability for the loss caused by the negligent act of the foreign correspondent

of the defendant bank which delivered the bill of lading for the goods to the consignee before the draft was accepted or paid, contrary to the instructions of plaintiff to the defendant and the instructions of the defendant to its agent. The contract created by the exemption in this case would not indicate to a fairly prudent business man that failure to collect included a wrongful delivery of securities or merchandise.

3. The phrase " failure or delay in collecting or remitting," contained in defendant's letter accepting the draft for collection, does not cover the case. There was more than failure to demand and collect an account which was due. Possession of the property was turned over to the debtor and the loss created, not by failure to collect an outstanding account, but by the negligent delivery of the goods to him without payment of the draft, according to the instructions of the plaintiff.

*Isler* v. *National Park Bank*, 210 App. Div. 844, reversed.

(Argued January 26, 1925; decided February 25, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered October 29, 1924, affirming a judgment in favor of defendant entered upon a verdict directed by the court at a Trial Term without a jury upon a stipulation that a verdict might be directed as though a jury were present.

*Samuel·J. Rosensohn, Arthur F. Gotthold* and *Walter W. Gross* for appellants. The defendant agreed to collect the draft for $1,085.48 in accordance with plaintiffs' instructions. There was no special agreement between plaintiffs and defendant by which the defendant acted as a mere conduit of transmission and by which Banco Nacional de Bolivia became the agent of the plaintiffs. (*Allen* v. *Merchants Bank,* 22 Wend. 215; *Montgomery County Bank* v. *Albany City Bank,* 7 N. Y. 459; *Ayrault* v. *Pacific Bank,* 47 N. Y. 570; *St. Nicholas Bank* v. *State Nat. Bank,* 128 N. Y. 26; *National Revere Bank* v. *National Bank of the Republic,* 172 N. Y. 102; *Gilpin* v. *Columbia Bank,* 220 N. Y. 406; *Mackersey* v. *Ramsays,* 9 C. & F. 818; *Exchange Nat. Bank* v. *Third Nat. Bank,* 112 U. S. 276; *Smith* v. *Nat. Bank,* 191 Fed. Rep. 220.)

*Emmett F. Smith* amd *Louis F. Doyle* for respondent. The defendant is not liable for the neglect of the Banco Nacional de Bolivia. (*Allen* v. *Merchants Bank,* 22 Wend. 215; *St. Nicholas Bank* v. *State Nat. Bank,* 128 N. Y. 26; *McBride* v. *Illinois Nat. Bank,* 163 App. Div. 417; *Columbia Overseas Corporation* v. *Banco Nacional Ultramarino,* 198 App. Div. 699; *National Revere Bank,* v. *National Bank of Republic,* 172 N. Y. 102.)

CRANE, J. This appeal brings up a question of the bank's liability for the negligence of its agent, Banco Nacional de Bolivia, causing the plaintiffs' loss. The law of this State ever since *Allen* v. *Merchant's* *Bank of the City of N. Y.* (22 Wend. 215) has been that a bank receiving commercial paper for collection is, in the absence of some special agreement, liable for a loss occasioned by default of its correspondents or other agents selected by it to make the collection. (*Nat. Revere Bank of Boston* v. *Nat. Bank of Republic of New York,* 172 N. Y. 102, 107; *Gilpin* v. *Columbia National Bank,* 220 N. Y. 406.)

The parties to this litigation recognize this law, the defendant, however, having thus far escaped liability on the holding that it had made a special agreement relieving it from all liability for the acts of its agent. There is no dis‐ pute on the facts, the sole question being whether the cor‐ respondence as matter of law establishes such an agreement.

The National Park Bank of New York has its office at 241 Broadway in that city. Isler and Guye are copartners doing business in the borough of Manhattan, city of New York, and were depositors with this bank. Never before had there been occasion for the plaintiffs to use the bank's foreign collection facilities. They had a customer named Zeballos at La Paz, Bolivia. They had sold him a bill of goods, but knowing little about his financial respon‐ sibility did not desire to have the goods delivered to him without payment. The following letters, therefore, passed between the plaintiffs and the defendant:

" NEW YORK, *July* 14, 1919.
" THE NATIONAL PARK BANK OF NEW YORK,
" 214 Broadway,
" City:

" GENTLEMEN.— We herewith beg to hand you the following documents:

" 1st: First and Second of Exchange for $1085.48, drawn in your favor at ninety days sight on Melquiades Zeballos, La Paz, Bolivia, against shipment of four bales strawbraids per S/S ' Turrialba ' of United Fruit Line.

" 2nd: Certificate of insurance in duplicate No. 56046 covering this shipment against all risks to the amount of $1200.00.

" 3rd: Consular invoice, certified, Copy C, No. 1240, consigned to Melquiades Zeballos T. 979.49.

" 4th: Our invoice in duplicate No. 292, Net 90 days sight draft amounting to 1085.48.

" 5th: Certified B/L A-1273 of United Fruit Co., freight prepaid, consigned to order of Isler & Guye, endorsed to Banco Mercantil of La Paz, and copy.

" Kindly forward the draft at once for collection and place the proceeds to the credit of our deposit account under advice to us.

" Documents; must only be delivered against payment. In case of non-payment notify us at once and have your correspondents cable for instructions. The goods would have to be properly warehoused and insured against all risks for our account. Charges thus incurred to be collected from the consignee if he should subsequently pay the draft and take the goods.

" Thanking you in advance for your prompt attention in this matter, we are,
" Yours very truly,
" ISLER & GUYE."

The following day the bank answered as follows:
30

" THE NATIONAL PARK BANK
    " OF NEW YORK
" Foreign Department.
    " P. O. Box 65.
" City Hall Station

" Cable Address: Parkbank
                    " NEW YORK, *July* 15*th* /19.
" " Messrs. ISLER AND GUYE,
                    " City:
    " DEAR SIRS.— Your favor of..............is received
and. its enclosures entered for collection as below.
    " Please note that we shall hereafter refer to these
items by the numbers placed in front of them.

—Collections are accepted    Yours respectfully,
    by us only upon the ex-    GEORGE H. KRETZ,
    press conditions that no        *Vice-President*
    responsibility is assumed
    by us for any failure or
    delay in collecting or re-
    mitting.

| Number | Amount | Time | Place of Drawee | Remarks |
|--------|--------|------|-----------------|---------|
| 8624/215 | $1085.48 | 90ds | La Paz | |

    " This acknowledgment of receipt of the above described
letter or letters is intended merely as such, and not as
advice of payment of any item included therein."

The plaintiffs' papers were sent by the defendant to
its correspondents or agent, Banco Nacional de Bolivia.
The bank was changed at the suggestion of the defendant
from the Banco Mercantil of La Paz to the Banco
Nacional de Bolivia, and the bill of lading of the United
Fruit Company consigned to the order of the plaintiffs
was indorsed by them also at the suggestion of the
defendant to the latter bank.

Banco Nacional de Bolivia made a serious mistake.
Instead of holding the bill of lading until the draft was
paid it delivered the bill of lading to Zeballos on the

1925.]            Opinion, per CRANE, J.        [239 N. Y. 462]

acceptance of the draft.    This was contrary to the instructions to the defendant and the instruction of the defendant to its agent.    Loss was occasioned by this breach of duty and neglect of instructions as Zeballos got the goods without payment and subsequently absconded.

These facts appear in the correspondence between the plaintiffs and the defendant.    On March twenty-fourth the bank wrote:

" We already communicated with our La Paz correspondents on March 3rd and are using every possible effort to secure proceeds or definite reasons for non-payment."

On September 24, 1920, the bank sent this letter to the plaintiffs:

" We have received a letter from our La Paz correspondents, dated July 28, 1920, in which we are informed that the documents pertaining to the above mentioned remittance were released against a 90 days acceptance.

" Our correspondents' lawyer endeavored to attach funds of the drawee but found that he had left La Paz, taking with him all his assets.    We asked our correspondents for a full explanation and reparation of any loss should they have been remiss in this matter."

Again on September 28, 1920, the bank sent a letter to Isler & Guye saying: " We have advised our correspondent that we consider them responsible for the delivery of the documents before payment of the draft.    Just as soon as we have further word we will advise you and in the meantime, thank you for your co-operation."    And on September twenty-fourth the defendant wrote its agent, Banco Nacional de Bolivia, at La Paz the following:

" We acknowledge receipt of your letter of July 28th 1920 in answer to ours of the 30th of June.    We are exceedingly surprised that you have failed to follow our instructions in regard to the above draft, and have delivered the documents on acceptance of the draft, instead of delivering them against payment."

From this correspondence it will be seen that the defendant's agent at La Paz caused the loss to the plaintiff by reason of its failure to follow instructions and through its negligence in delivering up the bill of lading whereby the possession of the goods was obtained by Zeballos without payment.

By the law of this State the defendant is liable for this negligence of its correspondent unless it has agreed with the plaintiff to the contrary.

The defendant and the courts below have found such an agreement in the words contained in its first letter dated July 15, 1919, reading: " Collections are accepted by us only upon the express conditions that, no responsibility is assumed by us for any failure or delay in collecting or remitting."

We are of the opinion that the phrase " failure or delay in collecting or remitting " does not cover this case. " Collecting " is defined by Webster's Dictionary as meaning " To demand or obtain payment of an account or other indebtedness." Here was something more than failure to demand and collect an account which was due. Possession of property was turned over to the alleged debtor, and the loss was created, not by failure to collect an outstanding account, but by this neglected delivery of property to him. If upon demand Zeballos refused to pay the draft when due, or to pay for the goods when the bill of lading was to be delivered, the shipment was to be returned to the plaintiffs or stored for their account according to the instructions in their letter of July 14, 1919. The loss thus occasioned would be the freight charges, insurance, storage, etc. This minor loss might be occasioned by the failure of the defendant's agent to make demand or to collect the money, and for such minor loss the defendant would not be liable. Likewise the defendant would not be liable if its agent, having collected the money failed to remit. These omissions or neglects were covered by this exempting clause. The

1925.]                    Opinion, per CRANE, J.                    [239 N. Y. 462]

words, however, cannot be extended to cover the agent's negligence in *creating* the loss by wrongly giving possession of property to which Zeballos, the purchaser, was not entitled.

Suppose, for instance, that the plaintiffs held a bond secured by a mortgage upon property in La Paz, Bolivia, and delivered it together with a satisfaction piece to the defendant for collection. This the defendant bank undertook to do, agreeing as in this case not to be liable for the failure of its agent in La Paz to collect or remit. However, the agent not only failed to collect but through its negligence gave up the satisfaction piece to the mortgagor without payment whereupon the mortgage lien was lost, canceled of record and the security rendered worthless. Could it be said that the negligence in thus causing a loss of the mortgage security or the lien upon the real property was no more than a failure to, collect or to remit? Such is the case here. The plaintiffs had title by the bill of lading to the shipped goods. The defendant's agent in La Paz by indorsement held this title. Through its negligence it lost the goods, lost the title, or what amounted in substance to a vendor's lien upon the goods. The loss has been occasioned, not through the failure to collect, but through negligence in delivery.

If the defendant desired to relieve itself from liability for the acts, of its agent, whether negligent or not, it could very well have used words about which there would be no misunderstanding and which would fully cover the case. In *McBride* v. *Illinois National Bank* (163 App. Div. 417, 419) the bank fully protected itself by an agreement which relieved it from all liability for the acts of its agent. The words were: " In receiving and forwarding paper outside of this city, this bank acts only as your agent, using its best efforts in selecting its correspondents, and will assume no responsibility except for its own acts."

When as in this case a bank is liable for the acts of its agent in the absence of some special agreement, the

agreement exempting it from liability should be so clearly stated that its customers may know in the exercise of ordinary intelligence the extent of the exemption. The contract in this case would not indicate to a fairly prudent business man that failure to collect included a wrongful delivery of securities or merchandise.

The judgments below should be reversed and, as there is no dispute about the facts, judgment is directed for the plaintiffs for the full amount claimed, with costs in all the courts.

HISCOCK, Ch. J., POUND, ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., not voting; McLAUGHLIN, J., absent.

Judgments reversed, etc.