[No. 19291.   *En Banc.*   January 12, 1926.]

FIRST NATIONAL BANK OF BREWSTER, *Respondent,* v.
COMMERCIAL BANK & TRUST COMPANY,
*Appellant.*[1]

[1] BANKS AND BANKING (33)—COLLECTIONS—RIGHTS AND LIABILI-
TIES AS TO PROCEEDS. The failure of a collecting bank to exact
payment of checks in money and the acceptance of an exchange
draft instead, which became worthless through the insolvency
of the drawers, loses its right to recoup against the drawees of
the checks, who otherwise would lose the amount, where there
was no proof of consent or usage of the banks in the vicinity or
knowledge on the part of the drawers of the checks of the man-
ner of dealing between the collecting and payee banks.

[2] BANKS AND BANKING (32)—COLLECTIONS—AUTHORITY TO ACCEPT
DRAFT IN PAYMENT. In such a case, consent to the collecting
bank's sending the checks directly to the payee bank does not
by implication authorize the collecting bank to accept an ex-
change draft instead of money.

[3] EVIDENCE (7)—JUDICIAL NOTICE—CUSTOMS AND USAGES. The
courts will not take judicial notice that it is the custom of a
collecting bank to accept payment of checks by an exchange
draft, instead of money, since the reverse is the rule under
certain circumstances.

Appeal from a judgment of the superior court for
Douglas county, Jeffers, J., entered December 15, 1924,
upon findings in favor of the plaintiff, in an action on
contract, submitted upon an agreed statement of facts.
Affirmed.

*C. B. Hughes* and *Hughes & Wallace,* for appellant.
*Johnson & O'Connor,* for respondent.

FULLERTON, J.—The respondent, First National
Bank of Brewster, and the appellant, Commercial Bank
&. Trust Company, are banking corporations, the
banking house of the first being at the town of Brewster,

[1]Reported in 242 Pac. 356.

in Okanogan county, and that of the second at the city of Wenatchee, in Chelan county. At the times of the transactions giving rise to the present controversy, The Bridgeport State Bank was likewise a banking corporation, having its banking house at the town of Bridgeport, in the county of Douglas. Both the Brewster bank and the Bridgeport bank were correspondents of the Wenatchee bank, but were not correspondents of each other, and each carried a deposit account with the Wenatchee bank.

On and immediately prior to September 24, 1922, the Brewster bank cashed a number of checks drawn by depositors of the Bridgeport bank on that bank, and, on the date given, forwarded the checks to the Wenatchee bank for clearance and collection, charging the total thereof ($1,014.14) to its account with the Wenatchee bank. The Wenatchee bank received the checks on September 26, 1922, and gave the Brewster bank credit for the amount thereof "subject to payment" of the checks. On the same day, it forwarded the checks directly to the Bridgeport bank for payment and remittance. The checks were in due course received by the Bridgeport bank, and that bank immediately charged the amount of the checks to the drawers thereof severally, and remitted the total sum so charged to the Wenatchee bank by drafts drawn on a Seattle bank in which it had a deposit sufficient in amount to meet the drafts. The drafts were forwarded to the Seattle bank by the Wenatchee bank, but before they reached that bank, the Bridgeport bank was taken over by the state supervisor of banking as an insolvent concern. Knowledge of this fact reached the Seattle bank before it paid the drafts, and thereupon it refused to pay them, returning them to the Wenatchee bank. The Wenatchee bank thereupon charged the amount of

the drafts to the Brewster bank, and thereafter refused to recognize liability on account of the transaction.

The present action was brought by the Brewster bank against the Wenatchee bank to recover the amount of the checks; its contention being that, as between itself and the Wenatchee bank, the checks were paid by the Bridgeport bank. A recovery was had in the court below, and this appeal is from the judgment evidencing the recovery.

In addition to the facts before recited, it was shown that the respondent (Brewster bank) had consented that paper of this sort might be sent direct to the Bridgeport bank by the appellant (Wenatchee bank) for payment, and that such had been the long course of dealing with reference to such paper. It was also understood between the appellant and respondent that any paper so forwarded which the Bridgeport bank did not recognize as a liability would be charged back to the respondent. But we find in the record nothing to indicate an agreement between the appellant and the respondent as to the manner in which payment of checks or other paper could be made by the Bridgeport bank to the appellant after it had been so forwarded; that is to say, there is nothing to indicate that the appellant had the right to accept as payment anything other than lawful money, or that which is by common consent and usage considered and treated as lawful money. There is, moreover, in the record nothing of the custom or common usage of banks in this vicinity as to the manner of making payments of checks or other forms of commercial paper drawn upon them. Nor is it shown that the respondent bank had notice or knowledge of the manner of dealing between the appellant and the Bridgeport bank with respect to such paper. All that appears is that the respondent knew that it was the custom of the appellant to send such

paper as it received for collection on the Bridgeport bank direct to such bank, and that for its own paper it consented that it might do so.

[1] The question before us then is a somewhat narrow one. It is, did the failure of the appellant to exact payment of the checks in lawful money, and its acceptance of an exchange draft, found to be worthless, instead of lawful money, render it liable to answer over to the respondent for the amount of the checks.

The general rule is well settled, that a collecting agent is without authority to accept for the debt of his principal anything but that which the law declares to be legal tender. This rule seems to be not only sound in principle but is sustained by the almost universal authority. As was said in *Anderson v. Gill,* 79 Md. 312, 29 Atl. 527:

"Now, a check on a bank or banker is payable in money, and in nothing else. Morse, Banks & Banking (2d edition), p. 268. The drawer, having funds to his credit with the drawee, has a right to assume that the payee will, upon presentation, exact in payment precisely what the check was given for, and that he will not accept, in lieu thereof, something for which it had not been drawn. It is certainly not within his contemplation that the payee should upon presentation, instead of requiring the cash to be paid, accept at the drawer's risk a check of the drawee upon some other bank or banker. The holder had a right to make immediate demand for payment upon receipt of Anderson's check, though she was not bound to do so. When her agent, the Old Town Bank—the collecting bank being the agent of the holder—(*Dodge v. Freedman's Sav. & Tru. Co.,* 93 U. S. 379) did make demand it was only authorized to receive money (*Ward v. Smith,* 74 U. S. 451); and the acceptance by the collecting agent of anything else rendered it as liable to the holder as though it had collected the cash. *Fifth Nat. Bank of Pittsburgh v. Ashworth,* 2 L. R. A. 491. (123 Penna. St. 212.)"

See, also, *Ward v. Smith,* 7 Wall. (U. S.) 447; *Federal Reserve Bank v. Malloy,* 264 U. S. 160.

There are, of course, exceptions to the general rule as thus stated. The rule may be modified by agreement, and there are well considered cases which hold, and we have ourselves so held (*Spokane Valley State Bank v. Lutes,* 133 Wash. 66, 233 Pac. 308), that the rule may be modified by custom. But, in the absence of such an agreement and in the absence of a custom to the contrary, nothing but payment in lawful money will satisfy the rule, and, if the collector accepts something else, which proves to be worthless, he is liable over to his principal for the amount of the loss caused thereby.

The hardships of a contrary rule are well illustrated by the present case. The checks, as we have before stated, when they were forwarded to the Bridgeport bank, were charged by that bank to the accounts of the several drawers, and were either returned or held for return to them. This was a payment of the checks as between the drawers and the several interested banks. Being such a payment, there could be no recourse upon the drawers. *Oregon Iron & Steel Co. v. Kelso State Bank,* 129 Wash. 109, 224 Pac. 569. It is a general rule that the collecting bank is liable for any neglect of duty occurring in the process of collection by which any of the parties to the paper are discharged. *National Revere Bank v. National Bank of Republic,* 172 N. Y. 102, 64 N. E. 799. It is also a general rule that, when a bank receives commercial paper for collection, it is bound to return it or account for the amount thereof. *McClure & Taylor v. Osborne & Co.,* 86 Ill. App. 465; *National Revere Bank v. National Bank of Republic, supra;* 7 C. J. 609, § 268. In this instance, had the checks not been paid by the drawee bank, the respondent would have had the right to recoup against the

several drawers of the checks. This right has been lost to it because of the acts of the appellant, and seemingly on any just principle the appellant should bear the loss rather than that it should be borne by the respondent.

[2] It is argued, however, that because the respondent consented to the sending of the checks directly to the drawee bank, it conferred, by necessary implication, authority on the appellant bank to accept in payment a draft from the drawee bank. But this precise question was before the supreme court of the United States in *Federal Reserve Bank v. Malloy, supra,* and we think we cannot better answer it than by quoting from that decision. The court says:

"It is insisted, however, that the authority to send checks to the drawee bank carries with it, by necessary implication, authority to accept a draft in payment from the drawee. We assume, for the purposes of the argument, that the obligation which the law imposes to collect only in money may be varied by a regulation, clearly and positively so providing, although, in terms, it relates only to the banks *inter se,* upon the ground that the owner of the check is bound by the knowledge and consent of his subagent. But to justify an extension by implication of the terms of the regulation, it must be made to appear, at least, that the addition sought to be annexed is a necessary means to carry into effect the authority expressly given by the regulation. See *First National Bank v. Missouri,* 263 U. S. 640. It follows from this limitation upon the extent and purpose of implied powers, that a distinct and independent power cannot be brought into existence by implication from the grant of another distinct power. In other words, authority to do a specific thing carries with it by implication the power to do whatever is necessary to effectuate the thing authorized—not to do another and separate thing, since that would be, not to carry the authority granted into effect, but to add an authority beyond the terms of the grant. The

authority expressed by the regulation is 'to send checks for collection to banks on which checks were drawn;' the authority now sought to be annexed by implication is 'to accept exchange drafts in payment,' instead of money, as required by law. That neither is a necessary means of carrying the other into effect, is clear. Nor are they necessary to each other in the sense that they are corollary or dependent. Certainly a check may be sent for collection to the drawee bank without entailing the necessity of remitting the amount in the form of exchange. Currency itself may be sent; and, as will appear presently, frequently is sent. The first form of remittance, to be sure, is more convenient; but it is not of such necessity as to exclude the second on the score of impracticability. There is nothing to prevent the sending bank from requiring the drawee to remit currency as a condition upon which the check may be satisfied and charged to the account of the drawer. We must not lose sight of the fact that we are here dealing with two distinct rules of law, both of which are sought to be avoided: (a) that which forbids a bank having paper for collection to use the drawee bank as a collecting agent; and (b) that which forbids a collecting agent accepting anything but money in payment. The first rule is probably based upon the theory that the drawee is not a suitable agent for the enforcement of his own obligation, and that commercial paper calling upon him to pay should not be surrendered to and satisfied by him, with the consequent release of the drawer, except upon previous or contemporaneous payment. The second rule proceeds upon the fact that the obligation of the drawee is to pay in money and nothing else. Plainly, the two rules are of such nature that one may be abrogated without the other; and it is obvious, since the law imposes upon a collecting agent the duty to collect in money, that none of the various subagents, receiving the paper to be collected upon the basis of that duty, can waive the requirement of the law in favor of the agent to whom it is transmitted.''

[3] It is next said that the acceptance of the drawee's draft instead of lawful money was justified by

custom. But the sufficient answer to this is, that no such custom is shown in the record, and it is not a matter of which the court may take judicial knowledge. Of its own knowledge, the court knows that the practice varies with the circumstances. In dealings between banks of good financial standing, well known to each other, it is possibly the general practice to accept without question drafts in payment of obligations. But the reverse is the rule when the circumstances are not these. There is, therefore, no such general custom, and the court cannot know without proof the customs of a particular place.

Finally, it is said that the present case is controlled by our case of *Spokane Valley Bank v. Lutes,* above cited, and must be reversed on the authority of that case. But a more careful examination of the case will show that the cited case differs materially in its facts from the present case. The custom found to obtain in that case was made an issue in the pleadings and was found to be sustained by proofs, while here there was no such issue, the appellant relying upon what it contended to be the general custom of banks and a custom of which the courts can take judicial knowledge. Again, the defendants in that case lost no rights against their payors by the manner of the payment of the certificate of deposit there in question, while here the respondent did suffer a loss; it lost its right of recoupment against the original drawers of the checks. There are other distinctions which will become apparent on a study of the case, but these are enough to show that the case is not controlling on a state of facts such as is here presented.

We conclude that there is no error in the judgment of the court below, and it will stand affirmed.

TOLMAN, C. J., PARKER, ASKREN, HOLCOMB, MITCHELL, and MAIN, JJ., concur.