[No. 23725. Department One. May 11, 1932.]

THE STATE OF WASHINGTON, *on the Relation of Kern & Kibbe, Plaintiff*, v. CHARLES W. HINTON, *as State Treasurer, Respondent*.[1]

[1]Reported in 10 P. (2d) 1115.

*William Hatch Davis, Guy E. Kelly, Thomas Mac-Mahon,* and *Neal & Bonneville (Jay Bowerman,* of counsel), for relator.

*The Attorney General* and *Lester T. Parker, Assistant,* for respondent.

PER CURIAM.—This is an original action in this court by which Kern & Kibbe, a corporation, by petition seeks a writ of mandate directing the state treasurer to pay to the plaintiff, out of moneys in the state treasury to the credit of the motor vehicle fund, $20,587.48 in satisfaction of warrants issued to plaintiff by the state auditor, drawn and directed to the state treasurer.

The facts in the case are presented by the pleadings and a written stipulation signed by the parties and filed in the cause, substantially as follows: The plaintiff is a corporation. Respondent, Charles W. Hinton, was and is treasurer of the state. During January, 1932, to and including the 21st day of the month, the Olympia National Bank was a national banking association, doing business in Olympia, Washington. That at the close of business on January 21, 1932, the Olympia National Bank closed its doors and discontinued the doing of business, and the next morning the bank

and its assets were taken over for liquidation by the comptroller of the currency of the United States.

That, on January 13, 1932, on account of the completion by plaintiff of two contracts for the construction and improvement of certain highways, the state became indebted to plaintiff in the sum of $20,578.48, for which, upon claims and vouchers duly presented, the state auditor, after settling and allowing the same, signed and delivered, as such auditor, two state warrants on the state treasury to pay the respective amounts of $8,043.48 and $12,535 out of any moneys in the motor vehicle fund in the state treasury not otherwise appropriated.

On January 15, 1932, the plaintiff endorsed and delivered both warrants to the First National Bank of Portland, Oregon, for collection, and on the same day that bank forwarded the warrants, with others belonging to other persons, to the respondent, as state treasurer, for payment, all of which were accepted by the state treasurer, and for which he issued checks to cover the respective amounts and forwarded the checks to the Portland bank, the checks being drawn by the state treasurer on the Olympia National Bank, payable to the First National Bank of Portland, or order.

The Portland bank, upon receipt of the checks on January 19, 1932, forwarded them by mail to the Seattle branch of the Federal Reserve Bank of San Francisco for collection, and on January 20, 1932, that bank forwarded the checks by mail to the Olympia National Bank for collection, and the latter named bank received the checks on January 21, 1932. At the time the checks were forwarded for collection and at the time they were received by the Olympia National Bank, it was a designated depository for the funds of the state, and the state treasurer had therein to his credit,

subject to check, an amount in excess of the checks involved.

Upon receipt of the checks, the Olympia National Bank charged them to the account of the state treasurer on the bank's books, and marked the checks "Paid"; but the bank in no way set apart or segregated any of its money for transmission to either the Seattle branch of the Federal Reserve Bank of San Francisco or to the Portland bank in settlement or payment of the checks, but on January 21, 1932, drew its draft in the sum of $29,659.19 to cover the checks involved, and other items, on the First National Bank of Seattle, payable to the Seattle branch of the Federal Reserve Bank of San Francisco, and forwarded the draft by mail on that day to the Seattle branch of the Federal Reserve Bank.

The amount of cash in the Olympia National Bank available for the payment of checks at the close of business the last four days the bank was open amounted to the following sums: January 18, $45,098.43; January 19, $42,620.76; January 20, $40,172.42; January 21, $27,255.24. At the close of business on January 21, the bank had to its credit with banks other than the First National Bank of Seattle, $44,679, based in part on items transmitted to such banks for collection, over and above the amount of all drafts drawn against such other banks; but there was no information available on January 21, or at the date of the stipulation of facts in the action, to show the amount of such collection items transmitted or the amount thereof not collected at that date.

It appears that, on January 21, after the state treasurer gave a check on the Olympia National Bank for which that bank issued its draft on the First National Bank of Seattle, the state treasurer gave to the Capital National Bank of Olympia a check on the Olympia Na-

tional Bank in the sum of $52,981.58, for the purpose of paying state warrants being collected through the agency of the Capital National Bank, which check was paid by means of telegraphic transfer of funds from the account of the Olympia National Bank with the Seattle branch of the Federal Reserve Bank to the account of the Capital National Bank. At that time, the Federal Reserve Bank required a reserve to be kept with it by the Olympia National Bank in the sum of approximately $120,000 and the payment of the check just mentioned by telegraphic transfer reduced the balance of credit of the Olympia National Bank with the Seattle branch of the Federal Reserve Bank to the sum of $29,090.

At the time the draft in question was forwarded to the bank in Seattle, the Olympia National Bank did not have, nor did it thereafter have, money or credit with the First National Bank of Seattle sufficient to meet it. The First National Bank of Seattle refused to honor the draft when presented, and it has at all times since been dishonored.

It had been a practice between the Olympia National Bank and the First National Bank of Seattle to give credit for cash letters when received and to charge back items not collected, but on *January 20, 1932*, and at all times thereafter, the First National Bank of Seattle refused to give the Olympia National Bank credit for such cash letters until and as the items were actually collected; but notwithstanding such refusal, the Olympia National Bank, upon issuing the draft on January 21, 1932, and at the close of business that day, had outstanding drafts on the First National Bank of Seattle in the total sum of $98,647.29, which was $5,-054.72 in excess of all cash items transmitted by the Olympia National Bank to the First National Bank of

Seattle for collection, whether collected or not at the time, as was known to the Olympia National Bank; as that amount, in that account, was entered as an overdraft in the books of the Olympia National Bank that day.

Upon dishonor of the draft and notice thereof to interested parties, the Seattle branch of the Federal Reserve Bank, upon demand, received from the receiver of the Olympia National Bank the checks in question, which were returned to the First National Bank of Portland and by that bank returned to the state treasurer upon his request and demand.

At all times mentioned, and now, there was and is in the motor vehicle fund in the state treasury sufficient available funds, not otherwise appropriated, for the payment of the warrants in favor of plaintiff.

The defendant rests his case on the general well settled rule that a collecting agent is without authority to accept for the debt of his principal anything but that which the law declares to be legal tender; or, as stated by the defendant to be the rule so far as this case is concerned, if the payee of a check, or his agent, accepts from the drawee bank something else in place of cash, as a draft on another bank, or a deposit slip or credit, where the drawee bank holds funds of the drawer sufficient to pay the check and would pay it in cash if demand therefor were made, the transaction will be regarded as a payment of the check and the drawer discharged. Counsel rely on *First National Bank v. Commercial Bank & Trust Co.*, 137 Wash. 335, 242 Pac. 356, and cases cited, and also the cases listed, commencing on page 994, in the annotation to the case of *Berg v. Federal Reserve Bank*, [18 Fed. (2d) 711] 52 A. L. R. 980.

The plaintiff, while contesting the common law rule relied on by the defendant, and hence its applicability

as such to this case, contends that the case is controlled in favor of plaintiff by certain provisions of chapter 203, Laws of 1929, p. 518, declared to be "The Bank Collection Code," the title of the act being "An act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money."

It contains a number of interrelated provisions as is usual in such a code, regulating collections by mail and defining the relation and powers of each bank taking part in collections as agent or sub-agent of the original depositor. The particular portion of the act upon which the plaintiff relies, as controlling the present case, is a part of § 11, as follows:

"Where an item is duly presented by mail to the drawee or payor, whether or not the same has been charged to the account of the maker or drawer thereof or returned to such maker or drawer, the agent collecting bank so presenting may, at its election, exercised with reasonable diligence, treat such item as dishonored by non-payment and recourse may be had upon prior parties thereto in any of the following cases:

"(1) Where the check or draft of the drawee or payor bank upon another bank received in payment therefor shall not be paid in due course;" Laws 1929, p. 522, § 11.

On the other hand, the defendant contends that, if it be admitted that the bank collection code would otherwise apply or control, it affords no relief to the plaintiff in this case because of § 7, which provides:

"Where the item is received by mail by a solvent drawee or payor bank, it shall be deemed paid when the amount is finally charged to the account of the maker or drawer." Laws 1929, p. 521, § 7.

The condition, however, upon which the item received by mail by the drawee or payor bank shall be deemed paid when finally charged to the account of the

maker or drawer, is that such bank shall be *solvent*. In this respect, on account of the facts hereinbefore stated, to which the parties have agreed by their pleadings and written stipulation filed in the action, we think it must be held, for the purposes of this case, that the drawee or payor bank on which the defendant's checks were drawn was not solvent at the time the bank received the checks and stamped them "Paid," within the purview of § 7 of the bank collection code.

Still further, we are of the opinion, upon the facts as the parties have stipulated them to be, that the portion of § 11 of the bank collection code above mentioned, on which the plaintiff relies, is applicable and controlling in this case, from which the conclusion follows that the plaintiff is entitled to the relief prayed for.

IT IS ORDERED AND ADJUDGED that a writ of mandate issue directing the defendant, Charles W. Hinton, as state treasurer, to pay to the plaintiff, Kern & Kibbe, a corporation, out of moneys in the state treasury to the credit of the motor vehicle fund, the sum of $20,-578.48 in satisfaction of the two warrants issued to the plaintiff by the state auditor.