[No. 34742. Department One. June 11, 1959.]

EDWIN MICKELSON et al., *Appellants*, v. WINNIFRED M. WILLIAMS et al., *Respondents*.[1]

[1]Reported in 340 P. (2d) 770.

*Greenwood, Shiers & Presser,* for appellants.

*Copass & Franklin,* for respondents.

HUNTER, J.—This is an appeal from a supplemental judgment of dismissal entered after a reversal and remand on the first appeal. *Mickelson v. Williams,* 50 Wn. (2d) 402, 312 P. (2d) 656 (1957).

Plaintiffs were copartners engaged in logging in Mason county and, on November 15, 1951, were conducting a logging operation on a location owned by them. In their logging operation at this location, they owned and used a donkey engine with lines and blocks attached. Prior to the above date, an action had been commenced against the plaintiffs by one Allen and his wife. A writ of attachment was issued in that cause on November 14, 1951. It was placed in the hands of defendant Emmett C. Williams, then

sheriff of Mason county. The donkey engine with the lines and blocks was attached by Williams' deputy on November 15, 1951. A copy of the writ of attachment was posted upon the donkey engine but the attached equipment was left in the open in the woods where it was being operated. No one was appointed as agent or keeper to care for the equipment, nor was a keeper's receipt taken from the plaintiffs. No further care or attention was given the property.

Sometime between the date of attachment and the spring of 1953, the lines, blocks and motor were stolen, and the hoist was damaged. The plaintiffs instituted this action for damages against the sheriff and the surety on his bond for damages to the attached property resulting from the sheriff's alleged neglect. Judgment was entered for the defendants. The first appeal followed.

In *Mickelson v. Williams, supra*, we held: (1) that the attachment was valid and the defendant sheriff exercised dominion over the property; (2) that defendant Williams, who no longer held office at the time of the loss and damage to the goods attached, was not relieved of the responsibility for the goods, since they were not delivered to his successor; (3) that Williams and his bondsmen were liable to the plaintiffs for damages sustained by them, provided such damages were caused by Williams' neglect. The judgment of the trial court was reversed and the cause remanded with direction to the trial court to find whether or not the appellants sustained damages as a result of Williams' neglect and, if so, the amount thereof.

Subsequent to the filing of the remittitur in the trial court, in pursuance of the above ruling, the defendant Williams died. The administratrix of his estate was substituted as party defendant. Defendants moved for an abatement and dismissal of the action. At the trial, no further testimony was taken. The court found that the motion for abatement was well taken and that the action should be dismissed; that in the event the supreme court, upon an appeal, should reverse the ruling of the trial court upon the abatement, the court made the further findings: that it takes notice of

the common practice in that community for owners of logging equipment to leave such equipment in the woods unattended and unguarded; that the sheriff as an ordinary and reasonable person was not bound to anticipate or foresee the loss of said equipment by theft and the commission of a felony; that the equipment was lost by theft; that the damages sustained by the plaintiffs in the event the supreme court determined the plaintiffs were entitled to a recovery against the defendants were $880. Supplemental judgment was entered dismissing plaintiffs' action and they have appealed.

Appellants assign error to the trial court's finding that their action abated upon the death of Williams. The respondents cite the established rule adopted by this court that the common law relative to survival of actions prevails in this state, except where modified by statute. At common law, an action founded upon tort for unliquidated damages did not survive the death of the wrongdoer. *Boyd v. Sibold*, 7 Wn. (2d) 279, 109 P. (2d) 535 (1941).

Appellants contend the common-law rule as to the survival of actions in tort has been modified as it applies to this case by the enactment of Laws of 1953, chapter 73, § 1, p. 111 (RCW 4.20.045), which was effective prior to Williams' death. The enactment provides:

"No claim for damages for bodily injuries, *property damage*, or wrongful death shall abate by reason of the death of the tort feasor or of any other person liable for damages for such bodily injury, property damage or wrongful death: *Provided, however,* That the plaintiff shall not recover judgment except upon competent evidence other than the testimony of said injured person or persons and the testimony of the injured person or persons, by itself, shall not be sufficient to overcome the presumption of due care on the part of the deceased tort feasor." (Italics ours.)

The respondents contend, and the trial court so found, that this section was intended by the legislature to relate only to situations where the property damage is a result of a direct physical injury inflicted on property by the tort feasor; that the term "property damage" does not, there-

fore, apply to a factual situation as in the instant case. The respondents state that the legislative intent can be determined from the legislative history of the bill. It was introduced as Senate Bill No. 9 (Laws of 1953) with the following title: "An Act Relating to survival of actions in *tort* upon death of the tort feasor." (Italics ours.) The act provided: "No claim for damages in *tort* shall abate. . . ." (Italics ours.) The words "in tort" were deleted and were substituted by the following: "for bodily injuries, property damage or wrongful death." This was done in both the title and body of the act. By this amendment to the bill the respondents argue it was the legislature's intention to limit torts to those committed by the infliction of a direct physical injury.

However, an examination of the express words and language of the statute, ultimately enacted, reflects no showing of an intention to limit the survival of claims for property damage to those instances resulting only from a direct physical injury. The statute is silent as to any such limitation. See *State v. Houck*, 32 Wn. (2d) 681, 203 P. (2d) 693 (1949).

The common-law rule as to the survival of tort actions has been the subject of most severe criticism. In an article written by Professor John W. Richards, a member of the faculty of the University of Washington Law School, appearing in 28 Wash. L. Rev. 201, 1953, only a few months after the above statute became effective, we find the following:

"This Act represents a long overdue attempt to reform a particularly barbarous segment of the law by providing for the survival of causes of action for bodily injuries, property damage, or wrongful death against the deceased tort feasor. It is not entirely clear that it will succeed; in 1869 a statute was passed saying that 'all causes of action . . . by one person against another, whether arising on contract or otherwise, survive to the personal representative of the former and against the personal representative of the latter.' One would suppose that nothing could be clearer— that the legislature could have done nothing more than to add the phrase 'and we mean it'—but by that strange al-

chemy which courts occasionally practice the statute was transmuted to read 'all causes of action which survive at common law . . . survive,' thereby furnishing as neat an example of judicial legislation as can readily be brought to mind. Nor was it in a good cause, or for justifiable ends; the origin and limits of the common law scheme of survival are not only wrapped in mystery, but its results have been outrageous in terms of justice. . . .

"This time hope for judicial approval of the statute is bright, if only because the great majority of the states now go even farther than the present Act in permitting survival. Six states in fact permit *all* causes to survive the death of either or both parties, though in some there are certain specified exceptions such as breach of marriage promise, slander, assault, and so on."

Also, see Law Revision Commission, State of N. Y. 159-229 (1935).

We reviewed the history of survival actions in *Cooper v. Runnels*, 48 Wn. (2d) 108, 291 P. (2d) 657, 57 A. L. R. (2d) 597 (1955), quoting therein from Goudy, Essays in Legal History (1913) 216-227. Commenting thereon, we stated:

"Professor Goudy said:

" 'Though this is one of the most familiar maxims of English law, the veil of obscurity covers not only its origin but its true import and significance.' . . .

"The best conjecture on the subject is that it was a result of the development of the tort remedy as an adjunct of criminal punishment. The principle developed at a time when many acts of human conduct were held to be felonies for which the wrongdoer forfeited all of his property and frequently his head. Death of the wrongdoer ended criminal responsibility; and, his property having been forfeited by reason of his felonious conduct, the establishment of tort liability became a useless gesture. No distinction was made between death of the owner of the damaged property and death of the wrongdoer, although the reason for denying survival of the action to the *plaintiff's* successors against a still living defendant is not so strong. Whatever the explanation, the rule became settled."

We believe the trend and the more enlightened thinking requires that a liberal interpretation be given by courts to those statutes relaxing the harshness of the com-

mon-law rule as to the survival of actions. We hold that RCW 4.20.045, *supra*, applies to a claim for property damage alleged to have been sustained by the appellants, as a result of Williams' tortious conduct in this case. The trial court erred in dismissing appellants' action on the ground of its abatement by reason of Williams' death.

The appellants contend the trial court erred in finding that it took notice that it was a common practice in the community where the attachment was made for owners to leave logging equipment unattended and unguarded. They argue that this is contrary to the rule that judicial notice may not be taken of a custom or usage, local in nature, without the proof of its existence and application. The statement of the rule is correct and it is applicable here as the appellants contend. 20 Am. Jur. 120, Evidence, § 109; *First Nat. Bank v. Commercial Bank & Trust Co.*, 137 Wash. 335, 242 Pac. 356 (1926).

The appellants further contend that the finding of the trial court to the effect that the theft of the articles from the attached logging equipment, to appellants' damage, was not a result of Williams' neglect is not supported by any substantial evidence in the record; that, to the contrary, the evidence is clear that Williams failed to perform the duty of care charged to a person, in the protection of property, who has exercised dominion by virtue of an attachment. We agree. See *Capper v. Callahan*, 39 Wn. (2d) 882, 239 P. (2d) 541 (1952), cited in *Mickelson v. Williams*, *supra*.

Appellants assign error to the damages, in the event of a reversal on this appeal, which were allowed by the trial court. We have reviewed the record and find the testimony on damages to be in dispute. The finding of the trial court for damages in the sum of $880, resulting from Williams' neglect, comes within the range of the testimony adduced. We will not substitute our judgment for that of the trial court on a dispute of fact.

Appellants contend, however, that the witness Allen, who testified as an expert in behalf of the respondents,

was not qualified to give his opinion as an expert and that his opinion was based upon hearsay testimony. No assignment of error has been made regarding the admission of this testimony. Therefore, we cannot review this asserted error. Rule on Appeal 43, 34A Wn. (2d) 17, as amended, effective January 2, 1953.

The judgment of the trial court dismissing the appellants' action is reversed, and the cause is remanded with directions to enter judgment in the amount of $880 in favor of the appellants.

It is so ordered.

HILL, DONWORTH, ROSELLINI, and OTT, JJ., concur.