## HARBAUER *v.* TOWNSHIP OF ADAMS.

1. APPEAL AND ERROR—NONJURY LAW CASE—REVIEW OF EVIDENCE.
   On appeal from judgment for plaintiff in action at law tried without a jury in which defendant claimed findings of court were contrary to the great weight of the evidence, it is necessary for the Supreme Court to review the evidence.

2. PAYMENT—LEGAL TENDER—FEDERAL RESERVE NOTES.
   Federal reserve notes in $100 denomination are legal tender for the payment of debts.

3. APPEAL AND ERROR—EVIDENCE—AGENCY—NOVATION—SUBSTITUTION OF DEBTORS.
   In action by bondholder against township obligor in which it appears that by common consent bonds were payable at a private bank in a nearby village rather than city bank named in the bonds, evidence did not support claim that the local bank which failed after maturity of bonds had been plaintiff's agent or that a novation or substitution of debtors had been effected.

4. BILLS AND NOTES—PAYMENT AT A BANK—PAYOR'S DEPOSIT.
   Making a bill or note payable at a bank is authority to the bank to apply the funds of the acceptor or maker on deposit to the payment of the paper.

5. BANKS AND BANKING—COLLECTION AGENT—DEPOSIT OF PAPER.
   Unless a bank is made a holder's agent by a deposit of the paper for collection, the bank has no authority to act for the holder.

6. SAME—COLLECTION AGENT—DESIGNATION OF PLACE OF PAYMENT.
   The naming of a bank in a promissory note as the place of payment does not make the bank an agent for the collection of the note or the receipt of the money.

7. BILLS AND NOTES—COLLECTION AGENT—PAYOR'S DEPOSIT OF FUNDS.
   An obligor cannot make bank where obligation is payable the agent of the holder by simply depositing with the bank the funds with which to pay the paper.

8. BANKS AND BANKING—DEPOSIT FOR PAYMENT—BANK AS AGENT OF MAKER.

Unless a bank has been made the holder's agent for collection by indorsement or deposit of paper for collection, the maker's deposit of money with bank designated as place of payment is received by the bank as agent of the maker and without some act of appropriation by the bank does not create any privity of contract as between the bank and holder.

9. SAME—DEPOSIT OF FUNDS BY PAYOR—EFFECT—TENDER.

The effect of the payor's deposit of money with a bank where it is payable is not to make the bank the holder's agent unless the paper be left for collection, but does enable the payor to plead a tender in exoneration of interest and costs of suit provided the tender is made good by payment into court.

10. BONDS—PRESENTATION—BANK AS AGENT OF MAKER—ESTOPPEL.

In bondholder's action against township obligor for balance unpaid upon maturity, where plaintiff had indulged in various extensions of time to bank which had claimed township was having difficulty in raising the money whereas money on deposit had not been paid and township officers had failed to inquire whether or not bank had performed township's duty of payment because banker lulled them into inactivity by allegedly effecting a novatory contract discharging the township, finding of trial judge that bank was not plaintiff's agent after the bonds became matured *held,* not against the great weight of the evidence, hence defense of estoppel could not be substantiated.

Appeal from Arenac; Shaffer (John C.), J.   Submitted October 15, 1941.   (Docket No. 57, Calendar No. 41,738.)   Decided December 2, 1941.

Assumpsit by Winifred P. Harbauer against Township of Adams, a municipal corporation, on bonds. Judgment for plaintiff. Defendant appeals. Affirmed.

*Schmalzriedt, Frye, Granse & Frye,* for plaintiff.

*Clark & Henry,* for defendant.

BUTZEL, J.   On October 1, 1917, defendant township issued 20 $1,000 coupon bonds due October 1, 1937, bearing 5 per cent. annual interest.   The township consists entirely of farms without any town or village in it.   It adjoins another township in which the village of Sterling is located.   All the members of the township board lived very near Sterling, where the Bank of Sterling was located.   It was a private bank owned by a copartnership.   J. O. Mutch was cashier and appeared to be in full control.   E. C. Poppleton, plaintiff's father, purchased the entire issue of bonds and prior to their maturity made a gift of them to plaintiff.   According to the terms of the bonds, both the principal and interest were payable at the First & Old Detroit National Bank of Detroit, but at some time after their issuance and many years before their maturity, the holder of the bonds, the members of the township board and the Sterling bank all agreed that the coupons should be paid at the latter bank.   The record leaves no doubt, and it is conceded by defendant, that the bank acted as its agent for many years prior to, and at least up to, the time the bonds became due.   The township from time to time made deposits in the bank, which would issue certificates of deposit to the township, and, as moneys were withdrawn or occasion demanded, the township board would indorse the certificates of deposit and cause new ones to be issued. The certificates at first were kept in a box to which the township board alone had access, but later the officers of the bank also had access.   Mutch, without the presence of any officers of defendant, would withdraw certificates, cancel them without any indorsement by defendant, and replace them with new ones, as he saw fit.   The members of the township board evidently placed their fullest confidence in Mutch as well as in the responsibility of the bank.

They gave the bank unusual powers as defendant's agent.

Each fall, while en route to his home in Florida, Poppleton would drive from his summer home at Houghton Lake to Sterling to collect the annual interest on the bonds. In 1933, Poppleton requested defendant to pay the bonds but it refused on account of its contract with the bank, which had agreed to pay 5 per cent. interest on the township deposits on condition that the moneys be kept in the bank for the full term of the bonds. In 1936, Poppleton refused to accept payment of the bonds because he was well satisfied with his investment which paid 5 per cent. interest. Although defendant had deposited sufficient funds in the Sterling bank prior to October 1, 1937, the date of maturity, to cover principal and interest to become due on the entire issue, plaintiff only received payment for $14,700, representing 14 bonds and interest, prior to September 29, 1938, when the bank failed. The bonds were never left at the bank for collection, or any other purpose. Plaintiff brings this suit for the balance of $6,000 of bonds and interest. Defendant claims that, although the bank had been its agent, Mr. Poppleton on and after August 23, 1937, constituted the bank his agent to collect the sums due on the maturing bonds, and, therefore, on and after October 1, 1937, when the bank held the $21,000 necessary to pay the bonds and deposited with it by defendant, the bank had ceased to be agent for defendant but had become agent for the plaintiff, that the unpaid $6,000 of bonds and interest was the debt of the bank, not that of defendant, and that defendant had been discharged from all further liability. Defendant also advances alternately the theory that a novation was effected whereby the Sterling bank was substituted

as obligor on the bonds in place of defendant which was thereby discharged. The judge, who tried the case without a jury, found for plaintiff.

Defendant on appeal alleges error on the ground, among others, that the findings of fact are contrary to the great weight of the evidence. This necessitates a review thereof by this court. The case presents a mixed question of law and fact.

Each fall Poppleton would correspond with the township with respect to the interest about to fall due. He carried on such correspondence with plaintiff's full knowledge and consent, after he had given her the bonds, in August and September, 1937. Much reliance is placed upon the correspondence shortly before the maturity of the bonds. We give important excerpts of the letters as well as their dates:

(1) Mutch to Poppleton (8–20–37):

"We have usually transacted their business for them (i. e., defendant township) and I suppose they will be looking for us to take care of this payment. If you will let us know your wishes, we will endeavor to help out."

(2) Poppleton to Mutch (8–23–37):

"I am willing that you transact the necessary business due Oct. 1st next in closing my bonds loan matter with Adams Twp. You ask what are 'my wishes.' They are that the payment be made by 2,100 new $100 Federal Reserve notes."

(3) Mutch to Poppleton (date not exactly ascertainable, as this letter was not printed in the record, but only referred to in a later letter):

In this letter Mutch informed Poppleton that the bank's burglary and robbery insurance policy forbade the accumulation of so large an amount of currency in the bank at any one time.

(4) Poppleton to Mutch (8-28-37):

"As pay'ts for many years have been made to me by you for Adams Twp., I expect this final pay't. will also be made by you at your place in cash as desired by me.   *   *   *   P. S.   Why not arrange to pay ½ due at a time and a week apart, if you will feel safer?"

(5) Mutch to Poppleton (9-9-37):

This letter is not printed in the record, but is referred to in a later letter.   In it Mutch informed Poppleton that the bank would try to comply with his suggestion of half-payments, a week apart.

(6) Poppleton to Mutch (9-13-37):

"I did plan or suggest that to favor you I would take the money due Oct. 1st from Adams Twp. in two equal payments, a week or ten days apart.   But to be in new bills of Federal Reserve issue of $100 each.

"Could not use any smaller ones nor a draft. Will call on Oct. 1st.   But if the day be stormy, will call on the next one not stormy."

(7) Mutch to Poppleton (9-18-37):

"I am at a loss to understand your various letters. My last letter to you (reference to No. 5, *supra*) was in answer to your letter of August 28th (No. 4, *supra*) in which you made the suggestion that we pay you one half at a time and a week apart and which I informed you that we would try to do.

"Now comes your letter intimating that you never made any suggestion of this nature.   I tried to explain previously that on account of our insurance, that we were afraid to keep this much money here, and when you offered this plan, I answered that we would try to do this to accommodate you.

"As a matter of fact, the bonds and interest are due in Detroit if I am not mistaken and anything dif-

ferent than that, that we would try to work out, would be for your benefit, not ours.

"Please let me know what we can do to assist but I do wish you would not ask us to do something too much contrary to our insurance rules which would necessarily open me to criticism."

(8) Poppleton to Mutch (9–21–37):

"I said in my letter
  "Pay. ½ Oct. 1st
  "Pay ½ in 10 days
all to be in $100 Federal Reserve *new* bills.    *    *    *
Also said if the day was stormy would call the next day not stormy."

It will be noticed that in letter No. 1, dated August 20, 1937, the bank stated that they usually transacted the business for defendant and supposed that defendant would be looking to them to take care of the payments. The bank also asked what Poppleton's wishes were and stated that it would endeavor to help out. As defendant's agent it invited Poppleton to state his wishes. The bonds were made payable in gold coin, which was no longer available. Poppleton in his reply letter (letter No. 2) stated that his wishes were that payment be made in "$100 Federal Reserve notes," which under the law were legal tender. The bank, without in any way intimating that it was not defendant's agent, informed Poppleton (letter No. 3) that the bank's insurance policy was insufficient to provide coverage if as much as $21,000 should be carried in currency at any one time.

In letter No. 4, Poppleton states that as the payments theretofore had been made by the bank for Adams township, he expected that the final payment would be handled in the same way. This would negative the claim that the bank was acting as his agent.

In a postscript he suggests the payment of one-half on maturity and the other half a week later. In letter No. 6, Poppleton again speaks of the moneys due from Adams township. Certainly no novation nor substitution of debtors can be gleaned from these letters.

When Poppleton drove over to the bank on the date of maturity, he took with him the entire $20,000 of bonds. The bank was only able to pay $10,000 and interest at that time. It paid $4,000 more with interest a few days later. The bank issued a certificate of deposit on October 1, 1937, in which it was stated that the township had deposited $10,500 payable to the order of "bank for bonds," on the return of the certificate properly indorsed with interest at the rate of 3 per cent. per annum, if left 12 months from the date. On October 14, 1937, it issued a new certificate for $6,300 in almost similar form to the one of October 1, 1937. The wording of the certificate is peculiar. It is not claimed that plaintiff knew anything about these certificates or that the bank had the money. She only knew that the bank was the defendant's agent, trusted with its fiscal affairs, and any arrangements she had with the bank were in the belief that the bank was the defendant's agent. There is no claim on the part of the township officers that they knew how the last two certificates of deposit were worded.

Defendant claims that it was not until election day, April, 1938, when it desired to burn the bonds at a township dinner, that it first learned that only 14 of them had been paid, the other 6 not having been paid. The cashier then assured defendant's officers that they had nothing to worry about as the obligation was one between the bank and the bondholder. They claim that with this assurance they

took no further steps to protect defendant. The bank closed its doors about six months later.

There is conflict in the testimony as to what was said at the time Poppleton and plaintiff went to the bank when the bonds matured. The township clerk testified that he and another official of the township went to the bank on October 1, 1937; that they had planned to be there when Mr. Poppleton came to receive the money, and that when they got there, they talked with Mr. Mutch, but not in the presence of Mr. Poppleton or plaintiff, and Mutch told them that he had made arrangements with Mr. Poppleton that the bonds were to be taken up, $10,000 on the due date, $10,000 in 10 days. He did not show witness any letters from Mr. Poppleton. The other officer, who accompanied the clerk, testified that he did see the letter. In reply to the question why he, as supervisor and as an official of the township, did not pick up the bonds when they were paid, he stated, because they came into the bank and the bank was handling them for us, that he trusted the bank, that he did not consider it meant much to trust the bank after the bonds were paid, and that he had implicit confidence in Mr. Mutch. Plaintiff positively testified that the cashier explained to her that the township was having great difficulty in getting its money. Plaintiff's husband testified to the same effect. The cashier denied that he made such a statement and a teller stated that he was in the room part of the time and did not hear such a statement made. The judge had the opportunity of seeing and hearing the witnesses. We are impressed with the correctness of his findings. It is sustained by the evidence.

Plaintiff relies on the case of *Baldwin's Bank of Penn Yan* v. *Smith*, 215 N. Y. 76 (109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500), decided by a divided court, where the facts were en-

tirely different. There the holder had sent the paper
to the defaulting bank for collection. We call atten-
tion, however, to the case of *Adams* v. *Hackensack
Improvement Commission*, 44 N. J. Law, 638 (43
Am. Rep. 406), wherein the court states the law as
follows:

"As the custodian of the money wherewith to
pay, whose agent is the banker?
"The contract of the maker, acceptor or obligor
is to pay the holder of the paper, and the place for
payment is designated simply for the convenience
of both parties. Making a bill or note payable at a
banker's, is authority to the banker to apply the
funds of the acceptor or maker on deposit to the
payment of the paper. 1 Daniel's Negotiable Instru-
ments, § 326a. If maturing paper be left with the
banker for collection, he becomes the agent of the
holder to receive payment; but unless the banker is
made the holder's agent by a deposit of the paper
with him for collection, he has no authority to act
for the holder. The naming of a bank in a promis-
sory note as the place of payment, does not make
the banking association an agent for the collection
of the note or the receipt of the money. No power,
authority or duty is thereby conferred upon the
banker in reference to the note; and the debtor can-
not make the banker the agent of the holder by sim-
ply depositing with him the funds to pay it with.
Unless the banker has been made the agent of the
holder by the indorsement of the paper or the de-
posit of it for collection, any money which the banker
receives to apply in payment of it will be deemed
to have been taken by him as agent of the payor.
1 Daniel's Negotiable Instruments, § 326; *Hills* v.
*Place*, 48 N. Y. 520 (8 Am. Rep. 568). Such a de-
posit, without some act of appropriation by the
banker, does not create any privity of contract as
between the banker and the holder of the paper.
*Hill* v. *Boyds*, L. R. 8 Eq. 290; *Johnson* v. *Robarts*,
L. R., 10 Ch. App. 505 (44 L. J. Ch. 678, 33 L. T. 138,

23 W. R. 763); *In re Barned's Banking Co., ex parte
Massey,* 22 L. T. R. 853 (39 L. J. Ch. 635, 18 W. R.
818); *Bank of the Republic* v. *Millard,* 10 Wall. (77
U. S.) 152 (19 L. Ed. 897). The only effect of the
payor having the money at the bank where the paper
is payable is, that it will enable him to plead a ten-
der in exoneration of interest and costs of suit,
provided he makes his tender good by payment of
the principal into court. *Caldwell* v. *Cassidy,* 8 Cow.
(N. Y.) 271; *Haxtun* v. *Bishop,* 3 Wend. (N. Y.) 13;
*Carley* v. *Vance,* 17 Mass. 389; *Ward* v. *Smith,* 7
Wall. (74 U. S.) 447 (19 L. Ed. 207); *Wood* v. *Mer-
chants Saving, Loan & Trust Co.,* 41 Ill. 267; 1 Am.
Lead. Cas. 478.''

No binding extension of time was ever given by
plaintiff either to the bank or to the township, but
only a series of successive indulgences, prompted,
no doubt, by the prospect of continuing to receive
interest from the township at a high rate.

Defendant also raises the defense of estoppel. It
is difficult to see how such a defense can be substan-
tiated, in view of the facts that it was upon Mutch,
their own agent, that the township relied in leaving
to him the performance of their duty of payment
and that they did not inquire whether or not he had
performed it for more than six months, and then
accepted, without verification, Mutch's assurance
that the township had nothing to worry about, that
the Sterling bank had concluded a novatory contract
with plaintiff which discharged the township. The
defense of estoppel can be raised only if it is found
that Mutch was plaintiff's agent after October 1,
1937. The trial judge found from all the testimony
that he was not. Such finding is not against the
great weight of the evidence.

The parties agree that if the rule of *Morley* v.
*University of Detroit,* 263 Mich. 126 (90 A. L. R.

464), that where the maker of a bond deposits money at an agreed bank sufficient to pay it, and the bank fails after maturity and before presentment by the holder, the loss falls on the maker, is applicable to this case, then judgment must be for plaintiff. Defendant has attempted, however, to differentiate the case from *Morley* v. *University of Detroit, supra,* by showing that the Sterling bank ceased to be agent for the township and became agent for, or co-contractor by novation with, plaintiff. The evidence does not support this contention.

We have carefully considered the various claims of error made by defendant township, but are persuaded that there is no merit in any of them. The judgment appealed from is, therefore, affirmed, with costs to plaintiff.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, Starr, and Wiest, JJ., concurred.